903 So.2d 392 (2005)
UNWIRED TELECOM CORP., formerly known as Unwired, Inc. and Successor in Interest by Merger to Mercury Cellular Telephone Company
v.
PARISH OF CALCASIEU, Louisiana; The Calcasieu Parish School Board; The Parish Police Jury; The Calcasieu Parish School Board System; The Treasurer of the Calcasieu Parish School Board; and The Treasurer's Designated Agents, including Rufus R. Fruge, Jr., in his Capacity as Director of the Calcasieu Parish School System, Sales and Use Tax Department.
No. 2003-CA-0732.
Supreme Court of Louisiana.
January 19, 2005.
*395 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edward Hart Bergin, William M. Backstrom, Jr., Coleman Douglas Ridley, Jr., New Orleans, counsel for Applicant.
Scofield, Gerard, Veron, Singletary & Pohorelsky, Russell Joseph Stutes, Jr., John Michael Veron, John Christopher Guillet, John B. Scofield, Toni Lewis Petrofes, Lake Charles, counsel for Respondents.
Hilton Sutton Bell, Mark James Jeansonne, New Orleans, counsel for amicus *396 curiae AT&T Wireless Services d/b/a AT&T Wireless II.
John Bettes Dunlap, III, Baton Rouge, counsel for amicus curiae The Wireless Group.
Tina Vicari Grant, counsel for amicus curiae The State of Louisiana and Murphy J. "Mike" Foster, Jr.
Rachelle Deckert Dick, Baton Rouge, counsel for amicus curiae Louisiana Municipal Association.
Roland John Dartez, William J. Doran, Jr., Dannie P. Garrett, III, Baton Rouge, counsel for amicus curiae The Police Jury Association/Louisiana.

ON REHEARING
KNOLL, Justice.
This case poses the question of whether the court of appeal erred in declaring 2002 La. Acts No. 85, § 3 an unconstitutional violation of LA. CONST. art. VII, § 15 because the legislative act retroactively nullifies an appellate court decision and relieves the plaintiff of a use tax obligation owed to the Collector[1] of the Calcasieu Parish sales and use taxes. An ancillary question raised and ruled upon in the trial court was whether the trial court erred in limiting the Collector's demand for penalties and attorney's fees to 15% of the total liability pursuant to LA.REV.STAT. ANN. § 33:2746 in accord with this Court's opinion in Elevating Boats, Inc. v. St. Bernard Parish, 00-3518 (La.9/5/01), 795 So.2d 1153. Finding no error in the appellate court's declaration of the unconstitutionality of Section 3 of Act No. 85 of the 2002 Legislative session, we affirm that decision. As to the ancillary question,[2] we adopt the reasoning announced by this Court in Anthony Crane Rental, L.P. v. Rufus Fruge, Jr., et al., XXXX-XXXX (La.10/21/03), 859 So.2d 631, and remand for further proceedings in conformity with that holding.

FACTS AND PROCEDURAL HISTORY
Unwired Telecom Corp., formerly U.S. Unwired, Inc. and the successor by merger with Mercury Cellular Telephone Company (hereafter Unwired), is a wireless telecommunications services provider that operates a retail outlet in Calcasieu Parish, Louisiana. Prior to the time of merger, the Collector successfully collected a use tax from Mercury Cellular for the period of January 1, 1993 through December 31, 1995, on cellular telephones Mercury regularly furnished its customers when they also contracted cellular telecommunications services with Mercury. That collection was affirmed in the trial court after Mercury paid the use tax assessment under protest.[3] That judgment was affirmed on appeal and this Court denied Mercury's application for a writ of certiorari. Mercury Cellular Telephone Co. v. Calcasieu Parish, 00-0318 (La.App. 3 Cir. 12/13/00), 773 So.2d 914, writ denied, 01-0126 (La.3/16/01), 787 So.2d 314.
Later, between January 1, 1996 and December 31, 1999, Unwired, like its predecessor Mercury, continued to regularly sell *397 cellular telephones below its actual wholesale cost to those customers who contracted cellular telecommunications services from Unwired for a specified period of time. Unwired, as did Mercury before it, collected applicable sales tax only on the price it charged its customers and remitted these sums to the Collector.[4] At no time did Unwired collect and remit a use tax to the Collector on its use of cellular telephones in the marketing of its telecommunication services.
The Collector audited Unwired's financial records for the above-referenced time frame. It determined that, based on its tax ordinances, Unwired's transfer of discounted cellular phones as part of a sale of a cellular telecommunications package is not a "sale at retail" in the regular course of business. Rather, the Collector asserted that Unwired "uses" the cellular phones in its business and thus it should have paid use tax, not sales tax, based on the wholesale prices of the cellular phones. Accordingly, the Collector assessed Unwired a use tax of $650,786.94, related interest of $295,310.59, and penalties in the sum of $162,696.94. On March 21, 2001, Unwired paid the use tax assessment under protest and timely filed suit for a refund on April 20, 2001.
Relying on Mercury, 773 So.2d 914, the Collector moved for summary judgment, contending Unwired is required to pay use tax on the total price it pays for each cellular telephone. Unwired opposed the motion for summary judgment, arguing its transfer of cellular telephones at discounted prices as part of its sales of cellular telecommunication packages is not subject to use tax. To the contrary, Unwired argued its transfers of these discounted phones constitute "sales at retail" under the applicable ordinances and are excluded from the use tax. Assuming arguendo that the tax assessment was correct, Unwired further argued under the provisions of LA.REV.STAT. ANN. § 33:2746 and this Court's holding in Elevating Boats, Inc. v. St. Bernard Parish, 00-3518 (La.9/5/01), 795 So.2d 1153, that the Collector could only hold it liable for no more than the 15% interest penalty.
The trial court granted the Collector's motion for summary judgment and ordered Unwired to pay all use taxes and interest assessed for the taxable period beginning January 1, 1996 and ending December 31, 1999. In reaching that conclusion, the trial court found the present case factually indistinguishable from Mercury. However, based upon this Court's holding in Elevating Boats, the trial court dismissed the Collector's assessment of penalties, denied its request for attorney's fees, and ordered a refund to Unwired of $152,696.94, the amount of the delinquency penalties Unwired previously paid under protest.
Unwired appealed the trial court's judgment because of the court's reliance on Mercury. The Collector answered the appeal, seeking to review part of the trial court ruling that relied upon Elevating Boats. While the appeals were pending, the Legislature enacted 2002 La. Acts No. 85, to provide new definitions of "retail sale" or "sale at retail," "sales price," and "use" in LA.REV.STAT. ANN. § 47:301(10)(v), (13)(g) and (h), and (18)(i). This legislation purported to legislatively "overrule" the Mercury holding. In stating 2002 La. Acts No. 85 was interpretative and applicable retroactively, § 3 of the act specified:

*398 The provisions of Section 1 of this Act are interpretative of R.S. 47:301(10), (13), and (18) for all taxable periods that ended prior to January 1, 2001, and are intended to explain and clarify their original intent, notwithstanding the contrary interpretation given in "Calcasieu Parish School Board v. Mercury Cellular Telephone Company", XXXX-XXXX (La.App. 3 Cir. 12/13/00), 773 So.2d 914, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 314, and all cases consistent therewith. Therefore, the provisions of Section 1 of this Act shall be applicable to all claims existing or actions pending for any taxable period prior to January 1, 2001, and to all claims arising or actions filed on and after its effective date.
Based upon Act 85, the Collector urged in brief before the court of appeal that the act was unconstitutional in three ways: (1) it impermissibly extinguished Unwired's existing tax obligations contrary to the provisions of LA. CONST. ANN. art. VII, § 15; (2) it creates a non-uniform exemption among otherwise equally situated tax jurisdiction in violation of LA. CONST. ANN. art. VI, § 29; and (3) the Act impermissibly shortened the prescriptive period for assessing taxes contrary to LA. CONST. ANN. art. VII, § 16.
Addressing the appeals of Unwired and the Collector, the Court of Appeal, Third Circuit, noted "but for the passage of Act 85, this court would find that summary judgment in favor of the School Board was appropriate based on Mercury." Unwired Telecom Corp. v. Parish of Calcasieu, 02-0839 (La.App. 3 Cir. 2/5/03), 838 So.2d 854, 857. Nevertheless, questioning whether the Legislature acted properly in declaring Act 85 interpretive and applicable retroactively, the appellate court addressed the Collector's argument that Act 85 was unconstitutional.
In its resolution of this issue, the appellate court reasoned the interpretation of the law is a judicial function, not legislative. The court further stated the Legislature cannot create a new substantive law in the guise of interpretive legislation to give retroactive effect "because it does not like the result of its legislation as it stands." Unwired, 838 So.2d at 858. On this basis, the appellate court determined Act 85 was clearly substantive law because the Legislature altered existing tax obligations when it redefined "sales" and "use," a violation of LA. CONST. ANN. art. VII, § 15 (providing that "[t]he legislature shall have no power to release, extinguish, or authorize the releasing or extinguishing of an indebtedness, liability, or obligation of a corporation or individual to the state, a parish, or a municipality"). Accordingly, the court of appeal held Act 85 cannot be applied retroactively to extinguish any debts Unwired owed prior to the enactment of the new law. Unwired, 838 So.2d at 859. Therefore, the appellate court held the trial court properly granted summary judgment in favor of the Collector on the authority of its earlier decision in Mercury. Id.
In addition, the court of appeal, relying on Elevating Boats, concluded the trial court properly determined the combined interest, penalties, and attorney's fees cannot exceed the 15% penalty provided in LA.REV.STAT. ANN. § 33:2746. Accordingly, the appellate court agreed the trial court correctly dismissed the Collector's assessment of penalties against Unwired, denied its request for attorney's fees, and ordered a refund of the penalties. Unwired, 838 So.2d at 859-60.
Unwired then filed a direct appeal to this Court, raising the appellate court's declaration of the unconstitutionality of Section 3 of Act No. 85 of 2002. The Collector cross-appealed, seeking reversal *399 of the lower courts' determination of interest, penalties, and attorney's fees.

REHEARING: SUPERVISORY JURISDICTION
The longstanding jurisprudential rule of law in Louisiana is litigants must raise constitutional attacks in the trial court, not the appellate courts, and the constitutional challenge must be specially pleaded and the grounds for the claim particularized. Vallo v. Gayle Oil Company, Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864. Although several exceptions to this general rule have been recognized,[5] germane to the present case is that an appellate court may entertain a plea of unconstitutionality when the statute applicable to the specific case becomes effective after the appeal is perfected.[6]Vallo, 646 So.2d at 864 n. 9; State v. Wright, 305 So.2d 406, 409 (La.1974) (Summers, J., dissenting); Summerell v. Phillips, 258 La. 587, 247 So.2d 542, 546 n. 5 (1971); In the Matter of Rubicon, Inc., 95-0108 (La.App. 1 Cir. 2/14/96), 670 So.2d 475. When a statute becomes effective after an appeal is lodged, it is impossible for the claimant to plead its unconstitutionality in the lower court. Under such circumstances, it would be unreasonable for an appellate court to refuse to consider a plea of unconstitutionality which was necessarily raised for the first time on appeal. Id. at 478. Thus, in the present case, the Collector could properly question the constitutionality of Act 85 on the appellate level.
Nevertheless, we found on original hearing the issue of constitutionality was not properly raised in the appellate court. Particularly, we noticed sua sponte the Collector only raised the issue of constitutionality in a brief in the appellate court. Relying upon Williams v. State, Dept. of Health and Hospitals, 95-0173 (La.1/26/96), 671 So.2d 899, 902, and Vallo, 646 So.2d at 865, we recognized a brief is not a pleading and cannot be used as a vehicle to contest the constitutionality of a statute.
*400 On rehearing, the Collector urges us to reconsider our earlier ruling and reach the issue of constitutionality originally raised in the appellate court.[7] For the following reasons, we grant rehearing and address the constitutional issues presented under our supervisory jurisdiction.[8]
The Louisiana Supreme Court has been granted supervisory powers since the constitution of 1879. ALBERT TATE, JR., SUPERVISORY POWERS OF THE LOUISIANA COURTS OF APPEAL, 38 TUL. L.REV. 429, 430 (1964). Indeed, as provided, in pertinent part, in LA. CONST. ANN. art. V, § 5(A), "The supreme court has general supervisory jurisdiction over all other courts." It is well recognized the constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. Progressive Sec. Ins. Co. v. Foster, 97-2985 (La.4/23/98), 711 So.2d 675, 678 n3; State Bond Comm'n v. All Taxpayers, Prop. Owners and Citizens of State, 510 So.2d 662, 663 (La.1987); State v. Wimberly, 414 So.2d 666, 670 (La.1982); Loeb v. Collier, 131 La. 377, 59 So. 816 (1912); State ex rel. Union Sawmill Co. v. Summit Lumber Co., 117 La. 643, 42 So. 195 (1906); TATE, 38 TUL. L.REV. AT 430; COMMENT, SUPERVISORY POWERS OF THE SUPREME COURT OF LOUISIANA OVER INFERIOR COURTS, 34 TUL. L.REV. 165 (1959). This Court can at all times intervene under its own plenary supervisory powers, whether or not an intermediate court has properly acted on the matter. TATE, 38 TUL. L.REV. at 430.
From the above cited jurisprudence, it is clear this Court has a long history of exercising its supervisory jurisdiction when it deems it necessary. That is not to say this Court exercises its supervisory jurisdiction lightly. In practice, certain limitations upon the use of this power are recognized by this Court out of respect for the independence of other courts in the determination of questions confined to their judicial discretion, and to avoid usurping merely appellate jurisdiction not conferred upon us by the constitution. Wimberly, 414 So.2d at 670 (citing TATE, 38 TUL. L.REV. at 431; COMMENT, 34 TUL. L.REV. at 168). However, there are instances in which we have granted writs even though the relator did not exhaust his remedies in the lower court. COMMENT, 34 TUL. L.REV. at 171.
The flexibility and extraordinary nature of supervisory writs render it extremely difficult to formulate any general rules as to when they will or will not issue. Id. In Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd., 99-0025 (La.7/7/99), 764 So.2d 31, we granted writs according to our supervisory jurisdiction under LA. CONST. ART. V, § 5(A), even though relator did not have a right of direct appeal to this Court under LA. CONST. ART. V, § 5(D). There we granted writs in order to avoid further delay in the disposition of the matter that had previously been remanded to the trial court. Louisiana Associated Gen. Contractors, Inc., 764 So.2d at 33. Other instances *401 of this Court exercising its supervisory authority though relator had not exhausted its remedies in the lower courts include Progressive Sec. Ins. Co., 711 So.2d at 678 n. 3; State Bond Comm'n, 510 So.2d at 663; State v. Peacock, 461 So.2d 1040, 1041 (La.1984)("since this case has already been briefed and argued in this court, judicial economy will best be served by exercising our supervisory jurisdiction"); Hainkel v. Henry, 313 So.2d 577, 578 (La.1975).
In finding it appropriate to address the constitutional issues at hand, we note the primary objective of all procedural rules should be to secure to parties the full measure of their substantive rights. Fraternal Order of Police v. City of New Orleans, 02-1801 (La.11/8/02), 831 So.2d 897, 899. It bears remembering that rules of procedure exist for the sake of substantive law and to implement substantive rights, not as an end in and of itself. JAMES FLEMING, JR., CIVIL PROCEDURE 2 (1965). "Procedure should always be indeed the `handmaiden of justice.'" Id., quoting HEPBURN, THE HISTORICAL DEVELOPMENT OF CODE PLEADING 19, 20 (1897); Erath Sugar Co. v. Broussard, 240 La. 949, 125 So.2d 776, 777 (1961) (holding that under the system of fact pleading prevalent in Louisiana, the procedure relevant to pleading is the "handmaid rather than the mistress" of justice); Ray v. Alexandria Mall, Through St. Paul Property & Liability Ins., 434 So.2d 1083, 1086 (La.1983) (holding that procedural rules are designed to permit the trial of a case to search for the truth and to have a decision based on substantive law rather than upon the technical rules of procedure). In that light, the aim of pleadings is basically threefold: to show that the court is vested with subject matter jurisdiction in a particular case; to set forth the bounds to a controversy; and to allow the parties to explore the issues within the bounds of the controversy. FLEMING, supra at 56-57.
In the present case, it is clear the appellate court had subject matter jurisdiction to consider the constitutional issues. Furthermore, the various facets of the constitutional issues were fleshed out, pro and con, in the parties' appellate briefs and argued in the appellate court, as well as in this court. Accordingly, although the constitutional issues were not raised in a formal pleading in the appellate court, the procedure utilized in the case sub judice met the primary objective of procedural rules relative to pleadings, i.e., it served to fully illumine the substantive legal question under review, focused the parties' attention on the constitutional issues presented, and allowed the appellate court to fully explore and address the constitutional questions urged.
In the particularly limited setting in the present case, we find judicial economy will best be served by exercising our supervisory jurisdiction in this matter. Although the Collector failed to raise the constitutional issues in a proper pleading in the appellate court, this matter has been thoroughly explored and argued before the appellate court and this Court. Moreover, the appellate court considered the constitutional issues at hand and rendered an opinion in that regard. Because of the important public interest in this matter, the length of time in which it has been pending, and in the interest of judicial economy, we choose to exercise our supervisory jurisdiction rather than remand this case to the district court.
As an ancillary, we further note that as provided in LA. CONST. ANN. art. V, § 5(F) if we have appellate jurisdiction under Section 5, then that jurisdiction may extend over all issues involved in the civil action before us. This Court has consistently interpreted LA. CONST. ANN. art. V, *402 § 5(F) to mean that our jurisdiction extends only over those other issues upon which the lower court has ruled. Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198; Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697, 701 (La.1993). Accordingly, because the lower courts fully considered the implications of LA.REV.STAT.ANN. § 33:2746 and our earlier decision in Elevating Boats on the question of the proper assessment of the taxpayer's liability for interest, penalties, and attorney's fees, we may also consider this latter ruling.

OVERVIEW: SALES AND USE TAX
As provided in LA. CONST. ANN. art. VII, § 1 it is mandated that the Legislature is vested with the power of taxation. Except as otherwise provided in the Louisiana Constitution, the Legislature shall never surrender, suspend or contract away the power of taxation. Notwithstanding, LA. CONST. ANN. art. VI, §§ 29 and 30 also grant taxing power to the local subdivisions of the state.
More particularly, under the authority of LA. CONST. ANN. art. VI, §§ 29 and 30, Louisiana's parishes, school boards and municipalities are authorized to adopt and levy a sales and use tax. When local governments[9] adopt and levy a sales and use tax it must be by ordinance approved by a majority of the registered voters. LA. CONST. ANN. art. VI, § 29. Such a tax may be levied upon "the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services as defined by law." LA. CONST. ANN. art. VI, § 29(A).
It bears remembering that we are only faced in the present case with the Collector's assessment of a use tax.[10] A use tax is a tax paid for the use, consumption, distribution or storage for use, consumption or distribution of tangible personal property within the jurisdiction of the taxing authority and is levied in lieu of a sales tax. The use that gives rise to a use tax means the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it does not include sales at retail of property in the regular course of business.
The Calcasieu Parish School Board Master Sales and Use Tax Ordinance, § 1.14(A)(i) defines "retail sale or sale at retail" as "a sale to a consumer or to any other person for any purpose other than for resale as tangible personal property." This definition is the same as that for "retail sale" or "sale at retail" found at LA.REV.STAT. ANN. § 47:301(10). The parish's Master Sales and Use Tax Ordinance, § 1.01 further defines "business" as "any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect. The term `business' shall not be construed to include the occasional *403 and isolated sales by a person who does not hold himself out as engaged in business." Further, as provided in the Parish' Master Sales and Use Tax Ordinance, §§ 6.01 and 6.02, use taxes are due by the twentieth of the month following the month when the use occurs.
In Mercury, the appellate court affirmed the trial court's grant of summary judgment in favor of the Collector on the ground that Mercury was properly assessed a use tax for the cellular telephones it furnished its customers at a price less than Mercury's wholesale cost.[11] The basis of the appellate court's reasoning was Mercury's transfer of the cellular telephones was "an incentive invariably ... as a conduit for marketing its cellular service." Mercury, 773 So.2d at 919. Simply stated, the appellate court held Mercury was liable for a use tax because it used the cellular telephones as marketing tools rather than reselling them. On March 15, 2001, this Court denied Mercury's writ application. Id., 787 So.2d 314.

RETROACTIVITY AND THE LOUISIANA CONSTITUTION
Unwired contends the Legislature's provision for the retroactive application of Act 85 is not violative of the Louisiana Constitution. It argues the Legislature did not modify well-established procedures or any applicable tax, but rather clarified the Mercury court's addition of requirements to the relevant ordinances relative to the taxation of cellular telephones transferred to customers at discounted prices as part of its sales of cellular telecommunication services.
The state's governmental powers are divided into three separate branches: legislative, executive, and judicial. LA. CONST. ANN. art. II, § 1. None of these branches, or anyone holding office in one of them, shall exercise power belonging to either of the others. LA. CONST. ANN. art. II, § 2.
In Louisiana, legislation is the superior source of law which custom cannot abrogate. LA. CIV.CODE ANN. art. 1, comments (a) and (c). As authorized in LA. CONST. ANN. art. III, § 1, the legislative power of the state is vested in the Legislature. In the exercise of legislative power, the Legislature may enact any legislation that the state constitution does not prohibit. Board of Com'rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d 281, 286 (La.1986). Therefore, the Legislature is free, within constitutional confines, to give its enactments retroactive effect. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992).
LA. CIV.CODE ANN. art. 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
In a like manner, LA.REV.STAT. ANN. § 1:2 provides:
No section of the Revised Statutes is retroactive unless it is expressly so stated.
Although LA.REV.STAT. ANN. § 1:2 does not distinguish between substantive, procedural and interpretive laws, Louisiana jurisprudence has consistently treated it and *404 LA. CIV.CODE ANN. art. 6 as co-extensive. Bourgeois v. A.P. Green Indus., Inc., 00-1528 (La.4/3/01), 783 So.2d 1251, 1256, n6.
In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), we interpreted these two provisions as requiring a two-fold inquiry:
First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
Cole, 599 So.2d at 1063.
Notwithstanding, even when the Legislature has expressed its intent to give a substantive law retroactive effect, the law many not be applied retroactively if it would impair contractual obligations or disturb vested rights. Smith v. Board of Trustees of Louisiana State Employees' Retirement System, 02-2161 (La.6/27/03), 851 So.2d 1100. In a like vein, interpretative legislation may also not be applied retroactively if the legislative change violates the principles of separation of powers and independence of the judiciary. See, infra.
The first step of our analysis, determining whether the Legislature provided for retroactive application, is resolved through an examination of Act 85. After examining that act, we find the Legislature definitively expressed the temporal effect it intended for Act 85. Section 3 states, "The provisions of Section 1 of this Act are interpretative of R.S. 47:301(10), (13), and (18)[and] shall be applicable to all claims existing or actions pending for any taxable period prior to January 1, 2001, and to all claims arising or actions filed on and after its effective date." This section clearly evidences the Legislature's intent that this act is interpretive and that it have retrospective and prospective application. Retroactive application having been specified, an analysis of the constitutional implications is called into question.
LA. CONST. ANN. art. V, § 1 vests the judicial power in a supreme court, courts of appeal, district courts, and other courts authorized by Article V. The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of government. Anthony Crane Rental, L.P. v. Fruge, 03-0115 (La.10/21/03), 859 So.2d 631, 634; Touchard v. Williams, 617 So.2d 885 (La.1993); State, Through Department of Highways v. Constant, 359 So.2d 666, 671 (La.App. 1 Cir.1978), amended and affirmed on other grounds, 369 So.2d 699 (La.1979). The Legislature may enact remedial legislation shortly following a court's decision that highlights an ambiguity or conflict in a statutory provision. That is, it is the province of the Legislature to clarify the law when the courts indicate the necessity of doing so. See, Grubbs v. Gulf International, 625 So.2d 495 (La.1993). However, interpreting the law is the designated function of the judiciary, not the Legislature.
As a court we have never entirely resolved the issue of whether legislation designated from the outset as interpretive violates the principles of separation of powers and independence of the judiciary. However, this Court has noted that arguably an "interpretive enactment begins to give the legislature judicial power." St. Paul, 609 So.2d at 818 (quoting H. ALSTON JOHNSON, LEGISLATIONPROCEDURE AND INTERPRETATION, DEVELOPMENTS IN THE LAW, 1983-84, 45 LA. L.REV. 341, 344 (1984)). Inherent problems with interpretive legislation are particularly brought to the fore in a situation like the one before this Court where the Legislature has expressly *405 targeted an appellate court decision by professing to explain and interpret a statute and thus reach its "original" meaning, that is, the one the authors of the revised statute intended. Such legislation effectively constitutes the adjudication of cases in contravention of LA. CONST. ANN. Art. II, § 2.
[T]he principle of separation of powers leaves no room for the adjudication of cases by the legislature, and this may be the true holding of certain Louisiana decisions. [See, e.g., State Licensing Bd. for Contractors v. State Civil Service Comm'n, 240 La. 331, 123 So.2d 76 (1960)). The principle of separation of powers does not exclude the authority of the legislature to enact clearly interpretive laws, clarifying the meaning of previously enacted texts outside the context of litigation. Of course, it is a different matter when the legislature actually amends previously enacted legislation by laws designated as interpretive. This again may be an improper exercise of power tending to attribute, contrary to constitutional guarantees, retroactive effect to new legislation. Yiannopoulos, Validity of Patents Covering Navigable WaterbottomsAct 62 of 1912, Price, Carter, and All That, 32 LA. L. REV. 1, 16 (1971) (emphasis supplied); see also 1 M. Planiol, [Civil Law Treatise Nos. 249-252 (LA.ST.L.INST.TRANS 1.1959)] § 251.
St. Paul, 609 So.2d at 819.[12]
The judiciary determines whether a statute enacted by the Legislature consists of substantive, procedural, or interpretive law for purposes of the statute's application. Thus, although the Legislature may never declare itself to be interpreting the law, it may in certain circumstances find itself to be the author of a so-called "interpretive" statute. Notwithstanding, it is not within the province of the Legislature to interpret legislation after the judiciary has already done so. Under our system of government, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). The interpretation of the law belongs to the judiciary, not the Legislature.
The judiciary in Louisiana is a co-equal branch of government along with the legislative and the executive branches. See LA. CONST. ANN. art. II, §§ 1, 2. Professor Symeonides writes that from its inception the Louisiana judiciary had an important role in the formulation of law and done far more than merely apply statutory provisions. S. SYMEONIDES, "THE LOUISIANA JUDGE: JUDGE, STATESMAN, POLITICIAN," LOUISIANA: MICROCOSM OF A MIXED JURISDICTION 89-103 (Vernon Palmer, ed., Carolina Academic Press 1999). Not only does the jurist in a civil law system have more freedom when deciding cases because the judge is not bound by the principle of stare decisis, the civil law statutes and codes are usually drafted in more general terms than common-law *406 statutes and thus depend more on judges to render them concrete through judicial interpretation. Id.
In the present case, the Legislature sought to change the Mercury Cellular decision. By passing 2002 La. Acts 85 in order to abrogate the appellate court's interpretation and application of a long-standing revised statute, the Legislature clearly assumed a function more properly entrusted to the judicial branch of government. INS v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (Powell, J., concurring). It is the duty of the judiciary to make certain the Legislature remains true to its proper governmental function. As was earlier held in Bourgeois, 783 So.2d at 1260, statutory construction and interpretation of legislative acts is solely a matter of the judicial branch of government. Accordingly, even though the Legislature had the authority to change the law after the Mercury decision became final, the changes could only have prospective application regardless of the Legislature's indication to the contrary. Accordingly, we find the Court of Appeal, Third Circuit, properly declared 2002 La. Act 8 § 3 unconstitutional.
In the alternative Unwired invites this Court to reconsider[13] whether Mercury Cellular was properly decided in the appellate court. It argues the appellate court improperly determined the fair market value of cellular telephones provided to customers at no charge or for a nominal fee was subject to sales and use tax.
We decline to re-examine Mercury Cellular at this juncture. But for the merger of Mercury Cellular and Unwired, the party against whom the Collector would have proceeded in the present case would have been Mercury Cellular. In such an instance, it would be inopportune for this Court to chart a new course when Unwired well knew the issues it was dealing with when it chose not to comply with the Calcasieu Parish use tax provisions and to conform its tax reporting with the holding of the Mercury Cellular decision.

PENALTIES AND ATTORNEY'S FEES
The Collector contends the trial court erred in limiting its demand for penalties and attorney's fees to 15% of the total liability pursuant to LA.REV.STAT. ANN. § 33:2746 in accord with our earlier decision in Elevating Boats, Inc., 795 So.2d at 1153.
We recently reexamined our holding in this regard in Anthony Crane Rental, L.P. v. Rufus Fruge, Jr., et al., 859 So.2d at 631. After considering the language in LA.REV.STAT. ANN. § 33:2841 and LA.REV. STAT. ANN. § 33:2746 and the legislative history of the statutes, we held that local taxing authorities are authorized to impose, through proper elections, a 15% interest penalty under LA.REV.STAT. ANN. § 33:2746 and, in addition, 25% penalties and 10% attorney fees as set forth in LA. REV.STAT. ANN. § 47:1602 and 47:5712 on delinquent taxes. We further overruled the contrary holding in Elevating Boats, Inc. v. St. Bernard Parish, 00-3518 (La.9/5/01), 795 So.2d 1153. Anthony Crane Rental, L.P., 859 So.2d at 639.
*407 Considering our decision in Anthony Crane Rental, L.P., we find it necessary to remand this case to the trial court for reconsideration of penalties and attorney's fees.

DECREE
For the foregoing reasons, we reverse the lower courts' judgment regarding the assessment of interest, penalties and attorney fees and remand to the district court for a determination of the precise amount of sales and use taxes, interest, penalties and attorney fees owed by Unwired Telecom Corp. consistent with this opinion and the views expressed in Anthony Crane Rental, L.P. v. Fruge, 03-0115 (La.10/21/03), 859 So.2d 631. In all other respects we affirm the judgment of the Court of Appeal, Third Circuit.
COURT OF APPEAL JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE DISTRICT COURT.
KIMBALL, J., dissents & assigns reasons.
JOHNSON, J., concurs.
WEIMER, J., concurs in the result.
KIMBALL, Justice, dissenting.
I continue to subscribe to this court's judgment on original hearing and do not believe a grant of rehearing was warranted in this case. In my view, our original decision that the constitutionality of the Act was not properly raised in the appellate court was correct. I do not believe reconsideration of this issue under our supervisory jurisdiction is justified in this case. Accordingly, I dissent from this court's opinion on rehearing.
NOTES
[1] As provided in various ordinances of the Calcasieu Parish School Board, the Parish of Calcasieu Police Jury, and various tax districts, the Tax Director for the School Board of the Parish of Calcasieu is designated as the Collector of Calcasieu Parish sales and use taxes.
[2] See infra at page 401-02 for discussion of this Court's jurisdiction to reach this ancillary issue.
[3] Local Ordinance § 11.01 and LA.REV.STAT. ANN. § 47:1576 set forth the requirements for a payment of taxes under protest and the procedure applicable thereto.
[4] To avoid double taxation, Unwired presented a "resale certificate" to the entity(ies) from whom it acquired the cellular telephones, certifying that it intended to resell the telephones and collect sales taxes from its customers.
[5] As we observed in Mosing v. Domas, XXXX-XXXX (La.10/15/02), 830 So.2d 967,

Several exceptions to this general rule have been recognized: (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) when the statute has been declared unconstitutional in another case; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record. State v. Wright, 305 So.2d 406, 409 (La.1974).
Mosing, 830 So.2d at 975, n2.
[6] The cited jurisprudence stated it was appropriate for a party to raise a constitutional issue in the appellate court when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court. In the present case, the trial court signed the orders granting appeal on May 7 and May 8, 2002. Act 85 became effective on June 27, 2002. The record was lodged in the appellate court on July 17, 2002. For reasons that follow, we find no error in the viability of the constitutional issue at the appellate level even though Act 85 became effective before the appeal record was lodged.

LA.CODE CIV. PROC. ANN. art.2088 provides:
The jurisdiction of the trial court over all matter in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal.
Thereafter, article 2088 provides the trial court with jurisdiction in ten particular instances. None of those instances are applicable in the present case. Accordingly, no authority existed under LA.CODE CIV. PROC. ANN. art.2088 to allow the litigants to raise the constitutional issue in the trial court because it was divested of jurisdiction. Therefore, the appellate court was the appropriate place to raise the constitutional issue.
[7] Although it did not file an application for rehearing, Unwired is not opposed to the Collector's application.
[8] As Chief Justice Calogero pointed out in his concurring opinion in City of Baton Rouge v. Ross, 94-0695 (La.4/28/95), 654 So.2d 1311:

The distinction between supervisory and appellate jurisdiction [in the 1974 Constitution] is a continuation of existing terminology, "supervisory" referring to the court's discretionary jurisdiction under which it has the power to select the cases it will hear, and "appellate" contemplating cases in which a party as a matter of right can demand that the court hear a case.
City of Baton Rouge, 654 So.2d at 1327; (emphasis in original).
[9] LA. CONST. ANN. art. VI, § 44(1) defines local government as any parish or municipality. LA. CONST. ANN. art. VI, § 44(2) defines a political subdivision as a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions.
[10] Mercury involved three categories of cellular telephone transactions: (1) those in which Mercury furnished telephones to its customers for free; (2) those in which Mercury charged only a nominal fee, such as $1; and (3) those in which Mercury charged its customers a serious consideration, but less than the actual price or value of the telephones. The Mercury decision found that none of the three categories of telephones constituted a sale. Mercury, 773 So.2d at 918-19.
[11] Although the lower courts approved a use tax on Unwired's use of cellular telephones as part of its merchandising of its telecommunication business, LA.REV.STAT. ANN. § 47:301(14)(i)(v)(aa) prohibits political subdivisions from levying a use tax on telecommunication services not in effect on July 1, 1990. The tax at issue does not fall within this prohibition.
[12] As noted in St. Paul, 609 So.2d at 819, n22:

A similar view is expressed in Singer, 1A Sutherland Stat. Const. § 27.04 (4th Ed.1985):
The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature considers inaccurate. Where such statutes are given any effect, the effect is prospective only. Any other result would make the legislature a court of last resort.... The application of the law to particular situations in litigation is clearly a judicial function, but the definition of the legislature's own acts is essential to the determination of the quality and character of the legislative regulation. There should be no question that an interpretive clause operating prospectively is within the legislature's power.
[13] As noted above, although this Court did not address the merits of Mercury Cellular, we denied Mercury Cellular's writ application to this Court. Id., 01-0126 (La.3/16/01), 787 So.2d 314. Even though a writ denial is indicative of this Court's decision not to exercise its discretionary jurisdiction, see In re: Quirk, 97-1143 (La.12/12/97), 705 So.2d 172; St. Tammany Manor v. Spartan Bldg., Corp., 509 So.2d 424 (La.1987), the effect of a writ denial nonetheless brought the litigation to a close and precludes a collateral attack of that judgment.