# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 22-422

**STATE OF LOUISIANA**

**VERSUS**

**TREVOR A. MATTHEWS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 3451-20
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

**CONVICTION AFFIRMED;**
**SENTENCE AFFIRMED AS AMENDED;**
**REMANDED WITH INSTRUCTIONS.**

**Stephen C. Dwight**
**District Attorney, 14ᵗʰ JDC**
**David S. Pipes**
**Assistant District Attorney, 14ᵗʰ JDC**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA   70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 1481**
**Monroe, LA   71201**
**(318) 855-6038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Trevor A. Matthews**

**Trevor A. Matthews**
**Falcon 3**
**Louisiana State Penitentiary**
**Angola, LA   70712**
**IN PROPER PERSON**

**PERRET, Judge.**

Defendant, Trevor A. Matthews, appeals his conviction for second-degree murder, a violation of La.R.S. 14:30.1, for which he received a sentence of life at hard labor to be served without benefit of parole, probation, or suspension of sentence. For the following reasons, Defendant's conviction is affirmed, and Defendant's sentence is affirmed as amended. Additionally, the trial court is instructed to amend the minutes and Commitment Order to delete the trial court's statement regarding diminution eligibility.

**FACTS AND PROCEDURAL HISTORY**

On February 27, 2020, Defendant was charged by indictment with the second-degree murder of Ronnie Sutherland. According to the indictment, on or about November 14, 2019, Defendant stabbed Ronnie Sutherland at least seventy-eight times, resulting in Sutherland's death.[1] Sutherland's body was found under several pallets in a field in Westlake, Louisiana.

After a trial, the jury returned a unanimous verdict of guilty on September 24, 2021. On October 5, 2021, Defendant was sentenced to serve life at hard labor without benefit of parole, probation, or suspension of sentence. A motion to reconsider sentence was filed on November 3, 2021, and was denied. Defendant filed a motion for appeal on November 9, 2021, which was granted.

On appeal, Defendant contends the State failed to prove beyond a reasonable doubt that he was guilty of second degree murder, the trial court erred in allowing

---

[1]Dr. Terry Welke, who performed the autopsy, testified the number of injuries would be considered "'Overkill,' because you just don't need to stab people and cut these people this many times in order to cause death." Charles Hunter, Jr., Chief Investigator with the Calcasieu Parish Coroner's Office, testified he would expect the person who stabbed Sutherland to have wounds on his/her hands.

the State to introduce letters purportedly written by him to Dawn Broussard ("Broussard") without proper authentication, and his sentence is excessive.

**ERRORS PATENT**

As required by La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find there is an error patent regarding the trial court's statement that Defendant's sentence was not subject to diminution of sentence.

After imposing the mandatory life sentence for second degree murder, the trial court stated, "It is this Court's position there is no diminution for good time." The minutes of sentencing also state that the sentence is to be served without diminution for good time. Additionally, as noted by the State in its brief, the Uniform Commitment Order also states the trial court imposed the sentence without benefit of diminution of sentence.

In *State v. Davis*, 19-562, pp. 8-10 (La.App. 3 Cir 2/5/20), 291 So.3d 246, 251-52, *writ granted on other grounds*, 20-392 (La. 6/3/20), 296 So.3d 1041, *reversed and remanded on other grounds*, 19-562 (La.App. 3 Cir. 7/29/20), 304 So.3d 559 (footnote omitted), this court addressed a similar situation where the trial court stated, "You are not entitled to diminution for good behavior." This court found the statement was an actual denial of diminution of sentence and stated as follows:

> After stating the number of years imposed for Defendant's sentence, the trial court informed Defendant that upon his release, he would be required to register as a sex offender for the remainder of his life and that he would be required to be electronically monitored in accordance with La.R.S. 14:43.1(C)(4). The trial court then stated:
>
> > Mr. Davis, your sentence has not been enhanced pursuant to the provisions of the Habitual Offender Act, nor has it been enhanced because there was no evidence of

2

any use of firearm. You are not entitled to diminution for good behavior.

The minutes of sentencing also state that Defendant is not entitled to diminution for good behavior.

Although La.Code Crim.P. art. 894.1(D) previously required the trial court to advise a defendant of whether his sentence was subject to diminution for good behavior, the article was amended in 2010 to delete such requirement. 2010 La. Acts No. 350, § 1; *see also State v. D.G.H.*, 07-524 (La.App. 3 Cir. 10/31/07), 969 So.2d 1254. Thus, at the time the trial court imposed the present sentence, La.Code Crim.P. art. 894.1(D) no longer required such an advisement. When La.Code Crim.P. art. 894.1(D) did require such an advisement, this court distinguished between an advisement and an actual denial of diminution of sentence, finding no corrective action was needed if the trial court merely advised a defendant that his sentence was not subject to diminution. *State v. James*, 09-606 (La.App. 3 Cir. 12/9/09), 26 So.3d 915.

Although we could find that the trial court's statement was merely an advisement, we will proceed as if it was an actual denial of diminution of sentence. The trial court was no longer required by La.Code Crim.P. art. 894.1(D) to advise Defendant of whether his sentence was subject to diminution of sentence. Thus, the trial court's statement regarding diminution of sentence could be regarded as an actual denial of diminution of sentence. *See State v. Burton*, 18-935 (La.App. 3 Cir. 6/5/19), 274 So.3d 122, where this court found a similar statement by the trial court was an actual denial of diminution of sentence rather than a mere advisement.

Accordingly, Defendant's sentence should be amended to delete such statement, as the trial court was not authorized to deny diminution of sentence. The supreme court has held that the provisions of La.R.S. 15:537(A), which prohibits diminution of sentence for certain sex offenders, and the provisions of La.R.S. 15:571.3, which sets forth the guidelines for diminution of sentence for all prisoners, do not form part of the sentence but are directives to the Department of Corrections in computing an inmate's sentence. *State v. Prejean*, 08-1192 (La. 2/6/09), 999 So.2d 1135 (per curiam). *See also State v. Fallon*, 15-1116 (La.App. 3 Cir. 4/6/16), 189 So.3d 605. "This court and the supreme court have repeatedly stated that trial judges lack authority to deny good time eligibility." *State v. Toups*, 17-792, p. 1 (La.App. 3 Cir. 11/22/17) (unpublished opinion.) Accordingly, Defendant's sentence is amended to delete the trial court's statement regarding diminution eligibility, and the trial court is instructed to make an entry in the minutes reflecting the amendment. *See State v. Drummer*, 17-790 (La.App. 3 Cir. 6/6/18), 245 So.3d 93, *writ denied*, 18-1139 (La. 2/11/19), 263 So.3d 413.

*Id.* at 251-52; *See also State v. Burton*, 18-935 (La.App. 3 Cir. 6/5/19), 274 So.3d 122, *reversed on other grounds*, 19-1079 (La. 6/30/21), 320 So.3d 1117.

Likewise, we find the trial court's statement an actual denial of diminution of sentence. Accordingly, we hereby amend Defendant's sentence to delete the trial court's statement regarding diminution eligibility, and the trial court is instructed to make an entry in the minutes as well as the Commitment Order reflecting the amendment.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, Defendant contends the State, which relied on circumstantial evidence, failed to exclude every reasonable hypothesis of innocence in this case. Thus, the State failed to prove beyond a reasonable doubt that he was guilty of second-degree murder.

> In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder. *State v. Robertson*, 96-1048, p. 1 (La.10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847, 850 (La.1990). A reviewing court may intervene in the trier of fact's decision only to the extent necessary to guarantee due process of law. *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988).

*State v. Pigford*, 05-477, pp. 5-6 (La. 2/22/06), 922 So.2d 517, 520-21 (per curiam).

"It is not the province of the reviewing court to assess the credibility of witnesses or reweigh evidence." *State v. Crawford*, 14-2153, p. 20 (La. 11/16/16), 218 So.3d 13, 26.

4

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(A). That the perpetrator intended to kill Sutherland is not at issue.

In brief to this court, Defendant acknowledges the State "put [him] in the area with Mr. Sutherland" on November 14, 2019, and he did not deny that. He contends the State introduced letters "which did not contain a confession of wrongdoing," experts presented by the State only offered inconclusive results, and Sutherland's DNA was not found on any property belonging to Defendant, including his knife, even though Sutherland was stabbed at least seventy-eight times. Thus, Defendant argues that the evidence was insufficient to convict him.

However, at trial, the State introduced Exhibit 153, which consisted of a handwritten summary of events the State purports was written by Defendant and contains inculpatory remarks. In that exhibit, Defendant admitted meeting Sutherland at Circle K, going to Sutherland's home, bringing Sutherland to the field where he was murdered, and stabbing Sutherland. The exhibit states, in pertinent part:

> I went to the car to get us some fireballs and me something to smoke, when I got back to "him" and picked my head up. "He" was standing there with a gun in his right hand saying "you know what this is" and that I was gay and playing on his Jop. I was in arms reach handing "Him" (the Dece) the Fireballs and the BLKs and I dropped them and his eyes moved and "His" body reacted to catch them (Everything was moving in slow motion but my thoughts and reflexes was fast)[.] I was so scared, I rushed forward I pushed and grabbed "His" right hand up and I grabbed my pocket knife from my right front Jean pocket and when the blade opened "I" stabbed "Him" on the lower left side of his stomach. "He" didn't let the gun go. "His" left knee buckled. I fail [sic] on top of "Him" (The Dece) "He" (The Dece) was still holding the gun. When "we" fail [sic] to the ground I stabbed "Him" between the neck and the shoulder on this left side. I only remember the first stab in the neck. (Thru [sic] [h]earsay over time I heard that I stabbed "Him" multiple times in the face)[.]

After that I Just remembered getting up from over the body. My left wrist was/is cut so was my Right index finger and bottom right pinky finger. After I realized what had happened, I looked at my hands and they was bloody and bleeding. . . . I saw the gun and I got it. As I was taking off my hoody I saw two wooden pallets and I covered the body with them. I used my hoody to cover the steering wheel from the blood. I left the scene . . . I drove to the boat launch on Houston River rd. [sic]. I parked the car and I got my first aid kit out of the trunk with some bottles of water[]. I put band aids on my right index finger and my bottom right pinky and I wrapped my left wrist with Gause and I wrapped it. I changed my clothes. . . . I put my bloody clothes in the trash bin. I kept my knife and "his" gun. I cleaned some of the car and left.

. . . .

. . . I didn't remember telling Dawn earlier that morning, she said "she asked me about my hand and I told her that I was changing the lights or the tires on the car and it fail[sic] on my hand. So I stuck with that story.

The exhibit continues:

It's the 22nd evening . . . . I told Dawn some of the story about where I killed the guy and told her that it was self-defense. I didn't want her to know everything that I knew "out of shame." So I didn't tell her that I killed somebody that way. So before Dawn left to go to her house on the 24th evening, I gave her the gun the guy had.

The exhibit later states that Defendant lied to police about meeting with three other people and leaving Sutherland in the field with them.

Defendant gave a statement to police on November 25, 2019, in which he admitted dropping Sutherland off in the field where his body was found but denied killing Sutherland. Defendant told police three men were waiting when he and Sutherland arrived. Defendant said he stayed in the field for a while then left without Sutherland. Defendant explained that injuries to his hands were the result of both a

6

knife game played with his girlfriend, Broussard, and a jack falling when he changed a tire.[2]

Defendant testified at trial and admitted meeting Sutherland at Circle K and that Sutherland and his dog left with Defendant. Defendant then went to Sutherland's house. Defendant said there were three men, two of whom had been at Circle K, where he dropped Sutherland off in the field.

Defendant denied harming Sutherland. Defendant explained that neither of the stories he told about the injuries to his hands were true. Defendant testified that Broussard stabbed him after he asked if he could have sex with Broussard's daughter, and he grabbed the knife from Broussard and was cut again when he did that. Defendant said he did not provide this information to police because he was protecting Broussard. Defendant denied his injuries were caused by stabbing someone seventy-eight times. Defendant went on to indicate that the people he left Sutherland in the field with fit the description of people who went on a stabbing spree in Houston. The Houston suspects were described as Hispanic. However, Defendant told Detective Travis Lavergne, who had interviewed Defendant, that one of the men was black and the other was light skinned.

Defendant denied writing the letters the State presented to the jury and alleged they were written by Broussard to herself. Defendant then said, "I'm not going to say [Broussard] wrote them, but for the sake of just getting it over with, yes, sir. Somebody wrote them." Defendant further testified that he and Broussard did not "discuss in no letter." Defendant testified that the handwriting on the letters looked like that of Broussard's mother. Defendant then discussed Broussard's arrest

---

[2]Defendant sought medical treatment at Christus Lake Area Hospital on November 15, 2019, and told personnel he was injured by a jack while changing a tire.

relating to the murder. Defendant was questioned as to whether Broussard had covered for him when she told police, after she was arrested, that the person in the Circle K video was not Defendant. Defendant agreed this would indicate Broussard was covering for him. Handwriting samples from Defendant and Broussard were admitted into evidence. A handwritten letter requesting a bond reduction that was filed in Defendant's case on November 16, 2020, was also presented to the jury. However, Defendant denied filing any motions in his case and did not know if Broussard wrote the request for bond reduction presented by the State.

Defendant does not address the content of the State's Exhibit 153 in his circumstantial evidence argument. However, in light of the evidence presented in State's Exhibit 153, we find the jury was free to accept any version of the events presented, and the verdict may well reflect the jury's belief of the remarks made in the State's Exhibit 153 and that they were written by Defendant. The jury's credibility determination cannot be second-guessed by this court. *State v. Davis*, 02-1043 (La. 6/27/03), 848 So.2d 557. Accordingly, we hereby affirm Defendant's conviction.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Defendant contends the trial court erred in allowing the State to introduce letters purportedly written by him to Broussard without proper authentication. Defendant asserts that letters admitted into evidence were provided to Detective Lavergne by Broussard. However, Broussard did not testify at trial, and no expert or lay witness testified the handwriting on the letters was Defendants. He contends the State's claim that he authored the letters relied on hearsay assertions from Broussard and the fact that information in the letters was known to Defendant. However, there was no testimony that any information therein

8

was known only to Defendant. Moreover, Detective Lavergne testified at the hearing that he could not rule out the possibility that the information in the letters was known to others. Defendant cites La.Code Evid. art. 901, which addresses the authentication or identification as a condition precedent to admissibility, and states, in pertinent part:[3]

> **A. General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> **B. Illustrations**. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article:
>
> . . . .
>
> **(2) Nonexpert opinion on handwriting.** Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.
>
> **(3) Comparison by trier or expert witness.** Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.

Defendant further alleges the trier of fact compared a handwriting specimen provided by him at trial to the letters submitted by the State. Defendant argues he is entitled to a new trial as a result of the admission of the letters at issue.

At a hearing held on September 20, 2021, the State affirmed it filed a notice of intent regarding use of letters allegedly authored by Defendant, and defense counsel asked the trial court to address the admissibility of the letters. The State called two witnesses to testify at that hearing and introduced State's Exhibit 1, letters written by Defendant, consisting of forty-five handwritten pages; State's Exhibit 2,

---

[3]Defendant did not set forth the wording of La.Code Evid. art. 901 but merely states the manner in which evidence can be authenticated is set forth in the article.

Defendant's medical records; and State's Exhibit 3, jail calls made by Defendant. The following day, arguments were presented by the parties, and the trial court found the letters were admissible. Defense counsel objected to the court's ruling.

During trial, defense counsel objected to the admissibility of State's Exhibits 153 and 161, a handwritten letter and a summary of events, on the basis of authenticity. The issue was further discussed, and the trial court found La.Code Evid. art. 901 had been satisfied. During his trial testimony, Detective Lavergne was questioned about references made in letters provided by Broussard. Defense counsel objected to the admissibility of State's Exhibits 153 and 161, and the court allowed defense counsel to traverse the witness. The trial court then accepted the exhibits. The issue was subsequently addressed again because there was concern the previous discussion had not been properly recorded. Defendant was also cross-examined about whether he wrote the letters and the content of the letters.[4] Defense counsel also addressed, in a bench conference, Defendant's claims that Broussard's mother wrote the letters, asked that part of a document authored by her be admitted, also attempted to persuade the court to allow the mother to provide a handwriting sample, and addressed calling her as a witness.

Uniform Rules—Courts of Appeal, Rule 2-12.4 provides, in pertinent part:

A. The brief of the appellant shall contain, under appropriate headings and in the order indicated:

. . . .

7) a statement of facts relevant to the assignments of error and issues for review, with references to the specific page numbers of the record;

---

[4]Defendant was not asked about the portion of the letter in which he stated he stabbed Sutherland.

(8) a short summary of the argument, i.e., a succinct, clear and accurate statement of the arguments made in the body of the brief;

(9) the argument, which shall contain:

(a) appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies;

(b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion; and

(c) for each assignment of error and issue for review which required an objection or proffer to preserve, a statement that the objection or proffer was made, with reference to the specific page numbers of the record; and

. . . .

B. . . .

. . . .

(3) The court may disregard the argument on an assignment of error or issue for review if suitable reference to the specific page numbers of the record is not made.

(4) All assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed.

Defendant's brief to this court fails to fully address what occurred at the September 20, 2021 hearing. He does not discuss the testimony presented, reference the relevant exhibits, or note the basis for the trial court's ruling made on September 21, 2021. Defendant cites to pages 759 and 807 of the record, which are part of the transcript of the September 20 hearing.[5] However, he fails to set forth the record page numbers containing the trial court's ruling. Defendant did not analyze the lengthy discussions that had occurred during the trial regarding the admissibility of

_____

[5]These are the only record references made in this assignment of error.

the letters, the exhibits the State actually introduced at trial, testimony by Detective Lavergne regarding the exhibits and defense counsel's traversal of that witness, the trial court's comments, and the record page numbers where this information can be found. Defendant merely cites La.Code Evid. art. 901 with no discussion of the standard of review, jurisprudence, or other authority addressing authentication of handwritten letters and the remedy for improper admission of such evidence.

Defendant suggests the remedy for erroneous admission of improperly authenticated evidence is a new trial. However, such errors are subject to a harmless error analysis. La.Code Crim.P. art. 921; *Cf. State v. Magee*, 11-574 (La. 9/28/12), 103 So.3d 285, *cert. denied*, 571 U.S. 830, 134 S.Ct. 56 (2013) (holding that "[t]he test is whether there is a reasonable possibility the error might have contributed to the conviction and whether the court can declare a belief that the error is harmless beyond a reasonable doubt").

Because Defendant's brief does not comply with Uniform Rules—Courts of Appeal, Rule 2-12.4, we will not consider this assignment of error.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his third assignment of error, Defendant contends the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence violates U.S. Const. amend. VIII and La.Const. art. 1, which prohibit excessive punishment. Defendant argues "that a mandatory life sentence is constitutionally excessive in that it allows for no proportionality review" and that "the procedural scheme currently in place (in Louisiana) is unconstitutional in that it does not allow for mitigation, individualized risk assessment, and no path to compassionate release for those no longer a threat to society." Thus, Defendant argues that the imposition of a life sentence without benefit of parole, probation, or suspension of sentence is

12

constitutionally excessive. Defendant suggests the logic applied in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), should be applied to all offenders.

After imposition of sentence, defense counsel objected to the procedural scheme in Louisiana because "it doesn't have mitigation" and "after time served, there is no individualized risk assessment and no path even to compassionate release for people who are clearly no longer a threat to society." In Defendant's motion to reconsider sentence, defense counsel raised the same or similar arguments. [6] However, we find Defendant's claim regarding the unconstitutionality of the procedural scheme in Louisiana is raised for the first time in this appeal. Thus, the issue is not properly before this court for review. Uniform Rules—Courts of Appeal, Rule 1-3. [7]

In *State v. Chester*, 19-363 (La.App. 5 Cir. 2/3/21), 314 So.3d 914, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321, the defendant argued that his mandatory life sentence without parole was unconstitutional for an eighteen-year-old convicted as a principal to second degree murder because, among other things, it was only forty-seven days past his eighteenth birthday at the time of the offense, he never passed the ninth grade, and he was functionally and mentally a juvenile. In addressing the issue, the fifth circuit stated:

---

[6] Although the jurisprudence has recognized there may be exceptions to this rule, *see Unwired Telecom Corp. v. Par. of Calcasieu*, 03-0732 (La. 1/19/05), 903 So.2d 392, n. 5 (on rehearing), none of those exceptions are applicable here.

[7] Uniform Rules—Courts of Appeal, Rule 1-3 states:

> The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, §10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.

For those offenders convicted of second degree murder in Louisiana, La.R.S. 14:30.1 mandates a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. *State v. Garrison*, 19-62 (La. App. 5 Cir. 4/23/20), 297 So.3d 190, *writ denied*, 20-547 (La. 9/23/20), 301 So.3d 1190. However, the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), held that a State's sentencing scheme that mandates life imprisonment without parole for those offenders under the age of eighteen at the time they committed a homicide offense, violates the Eighth Amendment prohibition against cruel and unusual punishment. *State v. Stewart*, 13-639 (La. App. 5 Cir. 1/31/14), 134 So.3d 636, 639, *writ denied*, 14-420 (La. 9/26/14), 149 So.3d 260. The *Miller* Court did not establish a categorical prohibition against life imprisonment without parole for juveniles but rather required that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest penalty for juveniles who have committed a homicide offense. *State v. Williams*, 12-1766 (La. 3/8/13), 108 So.3d 1169 (per curiam).

In the instant case, Defendant was eighteen years old at the time of the offense. In *State v. Hogan*, 47,993 (La. App. 2 Cir. 4/10/13), 113 So.3d 1195, 1202, *writ denied*, 13-977 (La. 11/8/13), 125 So.3d 445, the second circuit recognized that the decision in *Miller v. Alabama*, *supra*, is only applicable to juvenile offenders. The appellate court found that for purposes of the Eighth Amendment, a "juvenile offender" is a person under the age of eighteen years at the time of the offense. *Hogan*, *supra*; *See also State v. Hadnot*, 15-36 (La. App. 3 Cir. 6/3/15), 2015 WL 3548396 (unpublished opinion).

The penalty for second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. La.R.S. 14.30.1. A mandatory minimum sentence is presumed constitutional. *State v. Royal*, 03-439 (La. App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, *writ denied*, 03-3172 (La. 3/19/04), 869 So.2d 849. Further, Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. *See State v. Landry*, 388 So.2d 699 (La. 1980), *cert. denied*, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); *State v. Lovick*, 00-1833 (La. App. 5 Cir. 5/16/01), 788 So.2d 565, 573, *writ denied*, 01-1836 (La. 5/10/02), 815 So.2d 833; [*State v.*] *Hill*, [98-1087 (La.App. 5 Cir. 8/31/99),] 742 So.2d [690] at 690[, *writ denied*, 99-2848 (La. 3/24/00), 758 So.2d 147]; *State v. Pendelton*, 96-367 (La. App. 5 Cir. 5/28/97), 696 So.2d 144, *writ denied*, 97-1714 (La. 12/19/97), 706 So.2d 450.

*Id.* at 992 (footnote omitted).

*Miller* does not apply to Defendant, who was forty-one years old at the time of the offense. Furthermore, his mandatory sentence is not excessive especially given the heinous nature of the offense.

**DECREE:**

For these reasons, we hereby affirm Defendant's conviction. However, we hereby amend Defendant's sentence to delete the trial court's denial of diminution of sentence, and his sentence is affirmed as amended. Further, the trial court is instructed to make an entry in the minutes and the Commitment Order reflecting this amendment to Defendant's sentence.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**