GENOVESE, Judge.
| tIn this suit seeking to nullify- the judgment rendered, in an.underlying medical ■malpractice and general negligence action, Plaintiffs, Camille Landry, individually and on behalf of her minor child, Tai Landry, and Ryan Landry, individually and on behalf of his minor child, Tai Landry (collectively Landry), appeal the trial court’s judgment on cross-motions for summary judgment denying Landry’s motion for summary judgment and granting the motion for summary judgment of Defendant, Pediatric Services of America, Inc. (PSA), thereby dismissing Landry’s claims against PSA. PSA has answered the appeal relative to the trial court’s grant of Landry’s motion to strike an affidavit offered in support of its motion. For the reasons that follow, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY

■The minor child, Tai Landry, was admitted to Women’s and Children’s Hospital in Lafayette, Louisiana, where she came under the care and treatment of several physicians. She was administered supportive care with medical equipment provided by PSA., As a result of alleged medical malpractice, Landry filed suit, naming several .treating physicians as defendants and asserting a general, negligence claim against PSA.
The underlying lawsuit was tried over the course of several weeks before a jury, which returned a 'verdict attributing one hundred percent of the fault to a nonparty physician. Thereafter, a lengthy procedural history followed, the details of which are set forth in a prior opinion of this court in Landry v. Pediatric Services of America, Inc., 14-376 (La.App. 3 Cir. 10/15/14), 149 So.3d 1012, writs denied, 14-2381, 14-2385 (La.1/9/15), 157 So.3d 1112.
I ¡¡The instant matter was instituted by a “Petition to Annul Judgment Pursuant to La.C.C.P. Article 2004” filed by Landry, which alléged that the judgment should be rendered null due to ex parte communication occurring during ,the jury trial between the trial judge, Judge Broussard,[1] and a sitting juror, Kim Mayer (now Kim Gisclaire), which the trial court did not disclose to the parties. Neither party disputes that there was ex parte communication between the judge and Ms. Gisclaire; rather, the, issue presently before this court is whether the ex parte communication .resulted in “[a] final judgment obtained by fraud or ill practices” and, therefore, constitutes a nullity pursuant to La. Code Civ.P. art. 2004(A) as a matter of law,
Landry filed a motion for summary judgment which was supported, in part, by an affidavit of the former juror, Kim Mayer Gisclaire, and an affidavit of Casey Blanchette, Judge Broussard’s law clerk during the jury trial. PSA filed a cross- *543 motion for summary judgment,.which was supported by accompanying exhibits including an affidavit of Kizzy Dixon, the foreperson of the jury. Landry, thereafter, moved to - strike the affidavit of Ms. Dixon as inadmissible.
Following a hearing,,the trial court entered -a minute entry granting Landry’s motion to strike Ms. Dixon’s affidavit, denying Landres motion for summary judgment, and granting PSA’s motion for summary judgment. The trial court signed a concomitant judgment on June .3, 2015, from which Landry has .appealed, and from which PSA has answered the appeal,

ASSIGNMENTS OF ERROR

Landry presents the following assignments of error for our feview: ■ •
I si. The trial court in the nullity'action committed' reversible' error in denying [Landry’s] Cross[-]Motion for Summary Judgment after [Defendant, [PSA,] judicially admitted (in writing and in open court) all key “operative facts giving rise, to [Landry’s], right to assert the nullity action.,” ; ; .
II. The trial court in' the nullity action committed reversible error by ruling that the admitted ex parte communication between the trial judge and-the civil' juror and the admitted failure of the trial judge to inform the parties of the juror’s concerns over her continued jury service did not, as a matter of law, constitute a violation of Louisiana Code of Civil Procedure Article 1769(B).
III.The trial court in the nullity action committed reversible error in ruling that [Landry was] barred from asserting the nullity action due to [the] alleged failure to. exercise due diligence to uncover and expose in voir dire the future concerns of the juror which led to the admitted ex parte communication with the trial judge,
IV. ■ The-trial court-in the nullity action committed reversible error in ruling as a matter of law that there existed no causal connection between the alleged ill practice and (through violation of La.[Code . CivJP. art.] 1769(B)) and [sic] the . verdict .rendered by the civil jury ; in the underlying, trial.
V. The trial court in the nullity action . committed reversible error in ruling • that [Landry] failed to show facts, ■ which ¡¡proved [Landry was] prejudiced by the ex parte conversation.
‘In its Answer to Appeal; PSA'asserts error by the trial court in granting Landry’s motion to strike the- affidavit of the jury foreman, Ms. Dixon. Specifically, PSA contends the trial court so erred “because the affidavit does not reveal any statements' made during deliberations or any juror’s mental process[,] and because the content of the affidavit is admissible to show that there was no ‘outside influence’ brought to bear on the deliberations.”

LAW AND DISCUSSION

• At the outset, we- acknowledge PSA’s contention that Landry does “not have the right to appeal” because “the denial of a motion- for summary judgment is ’an interlocutory ruling fr6m which no appeal may be taken[.]” However, we disagree. ' ■ ■
LGenerally, pursuant to La.Code Civ.P. art. 968, the denial of a motion for ■summary judgment is an interlocutory judgment from which an appeal may not be taken. However, when there is also an appeal from a final judgment, such as a trial court’s grant of summary judgment, an appellate court may also review the interlocutory ruling. See In re Succession of Carlton, 11-288 (La.App. 3 *544 Cir. 10/5/11), 77 So.3d 989, writ denied, 11-2840 (La.3/2/12), 84 So.3d 532.
Mackmer v. Estate of Angelle, 14-665, p. 1 (La.App. 3 Cir. 12/10/14), 155 So.3d 125, 126 n. 2, writ denied, 15-69 (La.4/2/15), 176 So.3d 1031.
On appeal, Landry argues that “PSA made'very significant admissions in their ‘Statement of Uncontested Facts[,]’ which was pleaded with the Motion for Summary Judgment.” The purported admissions were: (1) that the ex parte communication “occurred after the jury had been sworn, after the presentation of evidence began, and prior to jury deliberations[;]” and, (2) that the trial court judge instructed the juror “not to reveal her involvement in the care of [the] minor child or her discussion with a. «o-worker regarding ‘cortical thumb.’” We agree with Landry that these facts “giv[e] rise to [Landry’s] right to assert the nullity action.” (emphasis added). That was the issue before this court in Landry, 149 So.3d at 1019, wherein another panel of this court reasoned:
Certainly, as recounted by the juror in the affidavit and repeated in the petition, the juror “expressed some discomfort with continuing to serve as a juror” to the trial judge because of the revelations regarding her potential involvement in the care of the child and that “she did not feel that it was appropriate[.]” While these statements are perhaps vague and not ultimately indicative that the juror had become unable or unqualified to serve due to bias, the statements are not insignificant. Thus, we find that they are sufficient to allege the existence of a cause of action on the issue of whether some improper procedure or practice deprived the plaintiffs of an opportunity to consider/challenge the juror’s continued service.
While these undisputed facts were held to be sufficient for purposes of stating a cause of action,' the issue now before this court is whether Landry is entitled to summary judgment. We, therefore, find no merit to this contention.
| ¿Therefore, in this appeal, we must decide whether the ex parte communication between the trial judge and the juror rises to the level of an “ill practice” to support a nullity action. La.Code Civ.P. art. 2004(A). For the reasons that follow, based upon our de novo review of the record,[2] we find that genuine issues of material fact remain which preclude the grant of summary judgment in favor of either party.
Relying in large part on the earlier opinion of this court, Landry argues that because an ex parte communication occurred, and because it was not revealed to the parties, these facts are sufficient to trigger La.Code Civ.P. art. 1769(B) and, ultimately, La.Code Civ.P. art. 2004. However, Landry is incorrect in stating that “whenever there is ex parte contact between a judge and the jury which is not revealed to counsel, the verdict decided thereafter is void as a matter of law.” We must, therefore, first consider the substance of the ex parte communication that occurred since, as PSA notes, it is not uncommon for there to be ex parte *545 communication between a trial judge and a member of the jury, not all of which is impermissible. Generally, ex parte communication between a trial judge and a jury which is “administrative” or “managerial in' nature” does not constitute reversible error, as opposed to ex parte communication “addressing legal issues.” Delo Reyes v. Liberty Mut. Fire Ins. Co., 08-769, p. 3 (La.App. 4 Cir. 2/18/09), 9 So.3d 890, 892, writ denied, 09-898 (La.6/5/09), 9 So.3d 874.
|fiThe undisputed facts in this case are that there was ex parte communication between Ms. Gisclaire and Judge Brous-sard and that the communication was not disclosed to the parties during the course of the trial. The extent and content of the communication was established by the affidavit of Ms. Gisclaire which states, in pertinent part:
3.
In my examination to become a juror, I revealed to the parties that I was presently a nurse at The Heart Hospital of Lafayette, but that formerly I had been a neonatal nurse working at Women’s and Children’s Hospital in Lafayette, Louisiana. I further revealed that I had worked certain cases with three of the defendants, Dr. Vasanth Nalam, Dr. Cong Vo[,] and Dr. Rosaire Belizaire. In my questioning, I indicated that-despite the fact that I had worked with them, that I could be a fair and impartial juror[,] and I believed this to be so at the outset of the trial.
4.
After approximately one week of trial, I found that my employers at The Heart Hospital of Lafayette would not make financial arrangements for me to serve as a juror and that it was necessitating me working hours after jury duty, which was placing a physical and financial strain upon me. Another juror, Lynd-sey Thibeaux, who was an alternate juror at that time, was also employed by The Heart Hospital of Lafayette and had similar problems. Ms. Thibeaux and myself asked 'to talk with Judge Ed Broussard whb was presiding over the trial. We voiced our concerns to Judge Broussard, but he informed us that he was unable to control our employer’s actions and that we would have to continue to serve. I also voiced at that time my concerns to Judge Broussard that I was feeling very- uncomfortable with ■ continuing to serve as a juror because much of the evidence was starting ■ to involve friends and people I had worked with; such- as- Drs. Vo and Belizaire. He instructed us tp continue serving as jurors and we did so..
5.
At some : point later in the trial, I began to see the mention of a condition of '“cortical thumb” in connection with thé treatment of Tai Landry as an infant at Women’s and Children’s Hospital. I remembered' having a discussion of this condition with the staff whose notes were being presented in evidence. Her name was Katherine |7Comeaux, and I recalled having the same discussion while I was working with her at Women’s and Children[’s] Hospital.
6.
Later, on February 14, 2011, I recall that certain medical records were broadcast onto- a screen for viewing by the jury[,] and I actually saw my name and my writing as a neonatal nurse in the treatment of Tai Landry. At the next break, I realized that I needed to speak to Judge Broussard and asked to do so. I spoke to Judge Broussard, who was also accompanied by his law clerk, Casey Blanchette. I ‘told him that I had seen my notes and my name as a treating nurse on the case of Tai Landry. I *546 did not feel it was appropriate since I had actually treated the child[,] and I recall discussing the condition of “cortical thumb” in connection with her treatment. Judge Broussard told me.,that “you are not to disclose this information to the other jurors[,] and I am not going to disclose this to. the lawyers.” He instructed me to -continue.to¡ serve.as a juror.
-Ms. , Gisclaire’s affidavit attests that, she relayed to the trial court judge: (1) that she. was having physical and financial issues due to the trial; (2) that she was uncomfortable with her continued service as a juror because of; her relationships with friends- and co-workers;' (3) that during the course of trial, she saw her name in the medical records and realized that she had been involved in the treatment of the minor, child; and, (4) that she did not feel that her serving as a juror was appropriate. Undisputedly Ms. Gisclaire disclosed some significant concerns to the trial judge relative to her service as a juror.. Moreover, although she may not have been cognizant of the. conflict, given that she actually provided treatment to the minor child, Ms. Gisclaire was .a potential witness in the trial in which.she was serving as a juror.
We find that the content of the ex parte communication was not simply “administrative” or “managerial in nature[.]” Delo Reyes, 9 So.3d at 892. To the extent that the discussions raised legitimate questions on the suitability of Ms. Gisclaire to continue to serve as a juror, and her obvious concern about doing so, | sthis ex parte communication gave rise to legal issues which should have been disclosed to the parties when they became known, to the trial court. At that point in the trial, the questionable propriety of Ms. Gisclaire remaining as a juror should have been made known-to the attorneys, and the attorneys should have been given the opportunity to explore further the nature and extent of Ms. Gisclaire’s fitness and ability to continue to serve as a fair and impartial juror in this trial. Given these facts,.we readily find that the trial court proceeded improvidently-and erred--in instructing Ms. Gis-claire not to reveal her concerns to her fellow jurors and in failing to make a full disclosure to the attorneys of the information relayed to it. This occurrence constituted a procedural defect that occurred during the course of this trial.
Finding that a procedural defect resulted from the --trial court’s failure to disclose the pertinent ex parte communication with Ms. Gisclaire does not end-our inquiry. The matter before us is an appeal of cross motions for summary judgment, not an appeal of the underlying jury verdict. In the instant case, Landry seeks to annul the judgment in the underlying action on the grounds that it was obtained by an ill practice. La.Code Civ.P. art. 2004(A). In Wright v. Louisiana Power & Light, 06-1181, pp. 12-13 (La.3/9/07) 951 So.2d 1058, 1067 (footnote omitted), our supreme court has set forth the following relative to such a nullity action:
In Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), this Court reviewed the historical' development of C.C.P. art. 2004 and noted that the jurisprudence under Art. 607 of the Code of Practice (the source of present C.C.P. art. 2004) established the 'following criteria for an action -in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Since that time, this Court has accepted those two requirements as the | anecessary elements in establishing a nullity action under Art. 2004. See *547 Gladstone v. American Auto. Ass’n, Inc., 419 So.2d 1219 (La.1982); Kem Search[, Inc. v. Sheffield, 434 So.2d 1067 (La.1983) ]; Bell Pass Terminal, Inc. v. Jolin, Inc., 01-0149 (La.10/16/01), 800 So.2d 762.
However, those cases also further defined the types of conduct required to establish those two elements depending on the type of fraud or ill practice alleged. This Court has held that “the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.” Power Marketing [Direct, Inc. v. Foster, 05-2023, p. 13 (La.9/6/06), 938 So.2d 662, 671]; Kem Search, supra at 1070 (citing Chauvin v. Nelkin Ins. Agency, Inc., 345 So.2d 132 (La.App. 1 Cir.), writ denied, 347 So.2d 256 (La.1977)); see also,- Schoen v. Bums, 321 So.2d 908' (La.App. 1 Cir. 1975); St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3 Cir.1965); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1 Cir.1963), writ denied, 245 La. 640, 160 So.2d 228 (1964).
Because the matter before us is an action in nullity, the critical inquiry is whether the procedural defect which occurred during the trial rises to the level of an ill practice and, thus, constitutes a nullity under the pertinent statute and the jurisprudence. Landry answers this inquiry in the affirmative and concludes that because an ill practice occurred, the underlying judgment is null under La.Code Civ.P. art. 2004. Of course, PSA reaches the contrary conclusion, and argues that it has not been shown that-Ms. Gisclaire was unable or disqualified to serve as mandated by La.Code Civ.P. art. 1769(B).[3] There is obviously a question of material fact as to whether the procedural defect rises to the level of an ill practice.
The critical evidence before us relative to the ex parte communication is the affidavit of Ms. Gisclaire. Ms. Gisclaire’s affidavit establishes that she was, having [ in“issues” with her service which was “placing a physical and financial strain” on her, that she was “uncomfortable” with her service as she learned the matter involved “friends and people that she worked with,” and that she “did not feel that is was appropriate” that she serve as a juror. We also have proof from her affidavit and the medical records, that Ms. Gisclaire actually provided treatment to the minor child, and thus, was in fact a potential witness in this case. As we have concluded, this evidence is sufficient to establish that a procedural defect resulted from the trial court’s failure to disclose the ex parte communication to the parties. However, we find that there remains a genuine issue of material fact as to whether this procedural defect that occurred during the underlying trial constitutes an ill practice under La.Code Civ.P. art. 1769(B), thereby establishing a nullity action under La.Code Civ.P. art. 2004(A).
Because we conclude that there remains a genuine issue of material fact as to whether the procedural defect which occurred during the course of this jmy trial constitutes an ill practice which forms the basis of. the nullity action, we must further conclude that neither party is entitled to judgment as a matter of law. We, there *548 fore, affirm the trial court’s denial of Landry’s motion for summary judgment, and we reverse the trial court’s grant of summary judgment in favor of PSA.
Finally, we acknowledge that PSA has filed an Answer to Appeal relative to the trial court’s grant of Landry’s motion to strike the affidavit of Ms. Dixon. However, given our finding that a genuine issue of material fact remains so as to preclude summary judgment in favor of either party, we pretermit a discussion of the trial court’s grant of the motion to strike raised in PSA’s Answer to Appeal.
In DECREE
For the reasons assigned, we affirm that portion of the trial court’s judgment denying the motion for summary judgment on behalf of Plaintiffs, Camille Landry, individually and on behalf of her minor child, Tai Landry, and Ryan Landry, individually and on behalf of his minor child, Tai Landry, and we reverse that portion of the trial court’s judgment granting summary judgment in favor of Pediatric Services of America, Inc. Costs of this appeal are assessed equally between the parties.
AFFIRMED IN PART; REVERSED IN PART.
COOKS, J„ concurs and assigns written reasons.

. Judge Broussard presided over the underlying jury trial When filed, the petition to annul was assigned to Judge Rubin,. who heard and ruled upon the cross-motions for summary judgment and - the corresponding motion to strike,

. When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the de novo standard of review, “using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.” Gray v. American Nat. Property & Cas. Co., 07-1670, p. 6 (La.2/26/08), 977 So.2d 839, 844 (quoting Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638).
Tolliver v. Broussard, 14-738, pp. 5-6 (La.App. 3 Cir. 12/10/14), 155 So.3d 137, 141, writ denied, 15-212 (La.4/17/15), 168 So.3d 401.

. Louisiana Code of Civil Procedure Article 1769(B) provides: "Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.”