STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-929

VALENCIA DAURBIGNEY

VERSUS

LIBERTY PERSONAL INSURANCE
COMPANY AND KELLY WATSON

\*\*\*\*\*\*\*\*\*\*

ON WRIT OF CERTIORARI FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. C-20154279-L
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PER CURIAM.

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Van H. Kyzar, and Jonathan W. Perry, Judges.

WRIT GRANTED AND MADE PEREMPTORY; REMANDED WITH
INSTRUCTIONS.

Jerome H. Moroux
Broussard & David, LLC
Post Office Box 3524
Lafayette, Louisiana 70502
(337) 232-9345
COUNSEL FOR PLAINTIFF/RELATOR:
    Valencia Daurbigney

Bruce D. Beach
Law Offices of Keith S. Giardina
9100 Bluebonnet Centre Boulevard, Suite 300
Baton Rouge, Louisiana 70809
COUNSEL FOR DEFENDANTS/RESPONDENTS:
    Liberty Personal Insurance Company
    Kelly Watson

**PER CURIAM.**

The tenor has changed in recent judicial elections. Now, special interest groups are pouring large sums of money into judicial campaigns, especially on the supreme court and appellate level, hoping that the candidate they are backing will side with their particular philosophy when deciding cases and issues before them. More to the point, special interest groups have now formed Political Action Committees (PACs) to raise large sums of money to support candidates the PAC perceives is more philosophically in tune with its goals and agenda.

In *Citizens United v. Federal Election Commission,* 558 U.S. 310, 130 S.Ct. 876 (2010), the United States Supreme Court held that unions and corporations were "persons" under the First Amendment and therefore entitled to free speech which included spending money without limitations in elections. Hence, PACs are not subject to individual campaign finance limits on contributions and PAC contributions have become increasingly important.

The recent race for a seat on the Louisiana Supreme Court between two sitting judges, Judge Marilyn Castle on the trial court and Judge Jimmy Genovese on the appellate court, was especially contentious. Campaign ads in the print and broadcast media funded by special interest groups escalated, costing the respective candidates' campaigns large sums of money. Such a campaign ad is the focus of the case before us, only the ad was directed by a candidate not against her opponent and not even against the PAC supporting her opponent, but directed against specifically named lawyers who contributed to the PAC.

In the ad at issue, The Committee to Elect Judge Marilyn Castle, designed, authorized and ran an ad that specifically listed named lawyers who concentrate in the area of plaintiff personal injury litigation, claiming that her opponent's judicial

impartiality had been compromised. The ad specifically named trial lawyers who "unethically" contributed large sums to his campaign, bypassing campaign finance limits on contributions by creating a special PAC to donate large sums to her opponent's campaign over and above campaign finance limits. PAC contributions, however, are clearly authorized by the *Citizens United* case and are neither unlawful nor unethical. In fact, public records of campaign financial reports, of which we take judicial notice, show that both campaigns received PAC contributions and/or PACs ran ads on their behalf.[1] The ad in question stated in pertinent part:[2]

> SHOULD PERSONAL INJURY LAWYERS PICK OUR NEXT SUPREME COURT JUSTICE Or should you? Personal Injury Lawyers have contributed over $1,000,000 to Jimmy Genovese's campaign. Then, when ethics laws prevented them from giving more, 18 of the wealthiest of them poured another $945,000 into a PAC (*Restore Our Coast*) created to promote Genovese's campaign.

It is significant to note that this particular campaign ad was run prominently in the Daily Advertiser, the Lafayette newspaper in Judge Castle's "home base," so to speak, on November 6, 2016, only two days before the election on November 8, 2016. As shown in the exhibit, the ad featured Judge Castle, pictured in color in her judicial robes, smiling and wearing a large cross, while it portrayed her opponent in dark tones, frowning with a sack of money symbol next to the names of the "wealthy" personal injury attorneys accused of trying to "Pick Our Next Supreme Court Justice."

---

[1] This court is allowed to take judicial notice of governmental websites. *See* La.Code Evid. art. 201. *See also Mendoza v. Mendoza,* 17-70 (La.App. 4 Cir. 6/6/18), 249 So.3d 67, *writ denied*, 18-1138 (La. 8/31/18), 251 So.3d 1083; *State* v. *Carpenter*, 00-436 (La.App. 3 Cir. 10/18/00), 772 So.2d 200, *writ denied*, 00-3152 (La. 1/25/02), 806 So.2d 665.

[2] A color copy of the ad is attached to plaintiff/relator's original writ application and was filed as an exhibit in the trial court.

2

The law firm of Broussard & David, plaintiff/relator's counsel, was the only Lafayette law firm specifically listed in the ad, although their contribution to the PAC in question had been made by a company they managed, 557 Jefferson Street, LLC, and not their law firm directly.[3] It is also significant to note that the campaign ad was paid for directly by Judge Castle's campaign, not a competing PAC. Thus, as the candidate, Judge Castle was personally responsible for the content of the ad.[4]

After a motion hearing had been set before Judge Castle in this case, the plaintiff/relator, through Broussard & David, timely filed a motion to recuse Judge Castle, stating the grounds articulated in La.Code Civ.P. art. 151(A)(4) applied. The Article provides, in pertinent part that, a judge of any court **shall** be recused when she "(4) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties **or the parties' attorneys** … to such an extent that [s]he would be unable to conduct fair and impartial proceedings." (Emphasis added.)

Recusal issues are difficult for everyone involved. Lawyers, for the most part, are reluctant to file such a motion unless the grounds are compelling, fearing such a motion will anger the trial judge and negatively influence the decision in the case at issue should recusal be denied, and perhaps future cases before the same judge.

---

[3] Broussard & David claimed that Judge Castle's campaign went to extra lengths to research and highlight their interest in 557 Jefferson Street, LLC, allegedly further evidencing actual bias against their law firm. They further claim that almost all of their clients come from the Lafayette Parish area, the target zone for the Lafayette newspaper where the ad was run and will greatly impair their ability to obtain a fair trial for their clients in the cases assigned to Judge Castle.

[4] Louisiana Code of Judicial Conduct, Canon 7(B)(2) provides, "**A Judge or Judicial Candidate Shall:** (2) review and approve the content of all political advertisements produced by the judge or judicial candidate or his or her campaign committee, as authorized by Canon 7D, before their dissemination[.]"

Louisiana Code of Judicial Conduct, Canon 7(D)(1) states in pertinent part, "Campaign committees may conduct campaigns for the judge or judicial candidate through media advertisements … not prohibited by law or the provisions of this Code."

Judges have a difficult time granting such a motion, fearing that it would be tantamount to a public declaration that they cannot be fair or impartial. Recusal decisions are especially difficult for a judicial colleague assigned to hear a request for recusal of a fellow judge on the same bench.

In prior decisions of our courts, recusal motions have generally been regarded with disfavor, starting out with a strong presumption in favor of the judge sought to be recused. The moving party, under our past jurisprudence, would then have the heavy burden of proving the judge sought to be recused had "actual bias" if the only ground for recusal was bias under La.Code Civ.P. art. 151(A)(4).[5]

How is an attorney seeking recusal on legitimate grounds in order to protect his client from the very real potential of judicial bias able to prove subjective "actual bias"? It is difficult, to say the least, and most lawyers simply will not try if the burden of proof is set so high, often at the expense of their clients.

In recent years, however, the United States Supreme Court has issued several opinions changing the initial inquiry from one of proof of actual specific bias on the part of the trial judge at issue to an objective standard. At least since *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456 (1975), *Caperton v. A.T. Massey Coal Co., Inc.* 556 U.S. 868, 129 S.Ct. 2252 (2009), and *Rippo v. Baker*, ___ U.S. ___, 137 S.Ct. 905 (2017), the United States Supreme Court has held as a matter of constitutional law that the judge hearing the recusal motion must use an objective standard. The only constitutionally permissible inquiry to be applied at the recusal hearing is,

---

[5] *See, e.g.*, *Gaspard v. Horace Mann Ins. Co.*, 17-1140 (La.App. 3 Cir. 5/9/18), 247 So.3d 778, *writ denied*, 18-897 (La. 9/28/18), 252 So.3d 931; *In Re Eleanor Pierce (Marshall) Stevens Living Trust*, 17-111 (La.App. 3 Cir. 10/4/17), 229 So.3d 36, *writ denied*, 17-1868 (La. 1/29/18), 233 So.3d 36; *Slaughter v. Board of Sup'rs of Southern Univ.*, 10-1114 (La.App. 1 Cir. 8/2/11), 76 So.3d. 465, *writ denied*, 11-2112 (La. 1/13/12), 77 So.3d 970.

"objectively speaking, 'the **probability** of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo*, _ U.S. at _ (emphasis added).

Does this mean there is no longer a presumption of fairness and impartially in favor of the judge sought to be recused? Perhaps not. But what is clear is that the burden of proof is not the same—no longer must actual, subjective bias be proven.

It is on this point that we find that our learned brother below assigned to hear the recusal motion was in error. It is clear from his reasons for ruling that he found that the plaintiff movers in the motion to recuse Judge Castle did not prove **actual bias.**

Using the objective test articulated by the U.S. Supreme Court, the question at issue now is: Does the tone and tenor of the ad, with Judge Castle's color picture in her judicial robes and cross, and her direct involvement in this campaign ad naming specific plaintiff personal injury attorneys, including Broussard & David, lead the reasonable person to conclude that, "Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo*, ___ U.S. at ___ (quoting *Withrow*, 421 U.S. at 47). This principle flows from the case of *Withrow*, 421 U.S. at 47, which, quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625 (1955), stated, "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to **prevent even the probability of unfairness**.'" (Emphasis added.)

In *LaCaze v. Louisiana*, _ U.S. _, 138 S.Ct. 60 (2017), the United States Supreme Court vacated the original decision in *State v. LaCaze*, 16-234 (La. 12/16/18), 208 So.3d 856, which denied recusal of the trial judge based on the

5

application of the subjective actual bias standard, and remanded the case to the Louisiana Supreme Court in light of *Rippo*. Our supreme court "was instructed to consider whether the trial judge's recusal should have been required because 'objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.''" *State v. LaCaze*, 16-234, p. 1 (La. 3/13/18), 239 So.3d 807, 809 (quoting *Rippo*, _ U.S. at _), *cert. denied*, _ U.S. _, 139 S.Ct. 321 (2018). The Louisiana Supreme Court on remand eventually found that based on the particular facts of that case, and using the *Rippo* objective standard, the trial judge's actions in that case were insufficient to warrant recusal. *Id.*

However, in *State v. Daigle*, 18-634, p. 1 (La. 4/30/18), 241 So.3d 999, 1000 (emphasis added) (citations omitted), our supreme court reiterated that under *Rippo*'s mandate to be applied in Louisiana courts, "'**evidence** of **actual bias is not necessary to require recusal**.' In other words, recusal may be required as a constitutional safeguard against **the risk of bias**...." *Id.* at 1000. In *Daigle*, 241 So.3d 999, the supreme court considered a trial judge's decision to deny recusal, which was affirmed by a panel of the Third Circuit, with one judge dissenting. *See State v. Daigle*, 18-318 (La.App. 3 Cir. 4/26/18) (an unpublished writ decision). Following application of the objective standard required by *Rippo*, the Louisiana Supreme Court reversed and recused the trial judge based on the facts of that case.

In this case, Judge Castle, for whatever reason, chose not to testify or issue any per curiam reasons for her decision not to recuse herself. She then promptly referred the recusal motion for random allotment to another judge on her court, who then conducted the hearing on the relator's motion to recuse Judge Castle.

Judge Thomas Duplantier was assigned to hear the recusal motion and specifically found at the close of the hearing:

> Okay, **So I find that there's not actual bias**. I don't – Would I have said it? No. Do I think it's pleasant? No. Do I think it's sad that we have presidential, congressional, [s]tate, and judicial elections now that instead of looking at qualifications, we look at the easiest mud to sling that might affect somebody's vote? And I do think that those things were published in that ad, during that election, during that contentious moment of that election, which was throwing mud back and forth from people from Virginia and wherever else all those PAC's came, I don't know, but I don't believe it shows actual bias or the presumption for Judge Castle. And I'll deny your motion.

(Emphasis added.)

***Error of Law***

We find that the trial court's determination that "actual bias" was required for the recusal of Judge Castle from this case involving relator's counsel Broussard & David was an error of law, requiring the application of the *de novo* standard of review. We find the trial court failed to ask the question *Rippo* requires, whether objectively speaking, considering all the circumstances alleged, "the risk of bias was too high to be constitutionally tolerable." *Rippo*, _ U.S. at _.

Reference to the Louisiana Code of Judicial Conduct is helpful in determining whether objectively speaking, the "risk of bias" is too high to be constitutionally tolerable. *See Rippo*, _ U.S. _. In pertinent part, the Canons provide:

### CANON 1
### A Judge Shall Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective.

7

## CANON 2
### A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities

A. A judge shall respect and comply with the law and **shall act at all times in a manner that promotes public confidence in the integrity and impartially of the judiciary**.

As used in this Code, **"impartiality or impartial" denotes absence of bias or prejudice in favor of, or against, particular parties** or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge.

## CANON 3
### A Judge Shall Perform the Duties of Office Impartially and Diligently

The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:

**A. Adjudicative Responsibilities.**

(1) A judge shall be faithful to the law and maintain professional competence in it. A judge shall be unswayed by partisan interest, public clamor, or fear of criticism.

. . . .

**C. Recusation.** A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule. In all other instances, a judge should not recuse himself or herself.

(Emphasis added.)

The Constitution of the U.S. and this state give this client and every person a right to a fair trial before an impartial tribunal. *See* U.S. Const. amend. XIV; La.Const. art. 1, § 16. In the case of *State ex. rel. Attorney General v. Lazarus*, 1 So. 361, 376 (1887), our supreme court commented on the need for "able, conscientious and inapproachable judges" and, quoting the first chief justice of Louisiana, stated, "All those who minister in the temple of justice, from the highest

to the lowest, should be above reproach and suspicion. None should serve at its altar whose conduct is at variance with his obligations."

The question really is not whether Judge Castle will tilt her ruling against the client because she still may be resentful of Broussard & David's financial support of her opponent through a PAC. One would like to believe that Judge Castle, who is reputed to be an honest, hardworking and conscientious trial judge, would try to do her best to decide the issues in the Valencia Daurbigney case fairly and impartially. However, under the recent jurisprudential standards on recusals, no "**actual bias**" need be proven. *Withrow*, 421 U.S. at 47, *Caperton*, 588 U.S. at 889; *Rippo*, 137 S.Ct. at 907; *LaCaze,* 239 So.3d at 809; and *Daigle*, 241 So.3d at 999-1000.

The trial judge hearing the recusal motion noted that he personally felt the motion was "disingenuous," noting that it was filed almost two years after the election and after the suit had been pending for over two years.[6] He recounted a personal experience wherein an attorney who had allegedly run a negative ad against him later had a case in his court and he elected not to recuse.[7] While we understand the trial judge's discomfort in hearing this motion and his recounting his own

---

[6] The relator's Motion To Recuse Per Louisiana Code Of Civil Procedure Article 151(A)(4) was filed on August 1, 2018. The hearing on the realtor's motion to recuse was held on September 17, 2018.

[7] The record reflects the trial court's misunderstanding of the constitutional standard for recusal:

> Now, the old days of me saying, well, I'm going to recuse myself because there might be an appearance of impropriety, we had a judge on this court that did it quite frequently, and we had an issue in our own system where we began doing something internally different. I happened to sit on a case a year ago, a jury trial, with … my opponent. If you think that one was contentious – I think you probably weren't around – but if you thought Judge Genovese and Judge Castle's was contentious, you should have sat in my seat. I recused myself for one (1) year, but after that I didn't anymore. … and I don't think in all the things you talk about, what **Judge Castle's campaign did, what her – her commercial said, and all those, that's not actual bias**. (Emphasis added.)

experiences when actual bias was the standard, proof of actual bias is no longer the standard. We need not determine whether there was actual bias, as the objective standards implementing the Due Process Clause do not require proof of actual bias. As the Supreme Court in *Caperton* states, "the question is whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Caperton,* 129 S.Ct. at 2255; 556 U.S. 868 (quoting *Withrow,* 421 U.S., at 47, 95 S.Ct. 1456).

Counsel for defendant/respondent cites to ten other cases assigned to Judge Castle in which Broussard & David are involved where no recusal motion has been filed. However, there is nothing in the record to show that any hearings were pending in any of these cases in order to trigger the necessity for filing such a motion. In fact, La.Code Civ.P. art. 154 mandates that such a "motion shall be filed prior to trial or hearing[,]" as was done in this case. The vast majority of all civil cases are resolved prior to trial or contradictory hearing and there is no necessity for a recusal in those cases as there is "no trial or hearing" pending.

According to plaintiff's counsel, this is the first time since the November 2016 election that they have an actual issue set for hearing on the docket in a case to be decided by Judge Castle, and, hence, is the first time they were required to present a recusal motion pursuant to La.Code Civ.P. art. 154.

The gravamen of the recusal motion is not that Broussard & David contributed to a PAC supporting Judge Castle's opponent and the defendant seeks recusal on that basis. Rather, the problem in this case is that the ad in question did not directly attack Judge Castle's opponent, but instead singled out specific lawyers who concentrate in the area of plaintiff personal injury litigation, including Broussard &

10

David, for allegedly **unethically** creating a PAC specifically for the purpose of bypassing campaign limits on contributions to a judicial campaign in an "unethical attempt" to "Pick Our Next Supreme Court Justice." As previously noted, the contributions by PACs are neither illegal nor unethical. The ad in question chills and challenges the legal ability of lawyers or anyone to contribute to judicial campaigns through PACs under the First Amendment, contributions lawful since *Citizens United* and its progeny were decided.

The importance of an impartial judiciary and one that is perceived to be impartial cannot be overstated. As the U.S. Supreme Court noted in *Caperton*, 556 U.S. at 885 (emphasis added) (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444 (1927)), "Due process requires an objective inquiry into whether the contributor's influence on the election under all the circumstances 'would offer a possible temptation to the average … judge to … lead him not to hold the balance nice, clear and true.'"

Public trust and confidence in the judiciary is already suffering. Looking at this case objectively, given the optics, the tone, timing and wording of the ad, it is implausible that this client, or any reasonable client under the circumstances, could have trust and confidence in the impartiality of the trial judge when the sitting trial judge hearing her case has published such an ad directly naming and attacking her attorneys.

11

## CONCLUSION

We find that "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo,* _ U.S. at _. *See also Daigle*, 241 So.3d 999; *LaCaze*, 239 So.3d 807. In keeping with the spirit of the applicable Canons of the Code of Judicial Conduct and the controlling jurisprudence, we find that recusal of Judge Castle is required under the unique circumstances of this case.

We grant the writ, make it peremptory, reverse the ruling of the trial court, order recusal of Judge Marilyn Castle, and remand the matter to the Lafayette Parish Clerk of Court to randomly allot this case to another judge serving that judicial district in accordance with that court's rules and procedures.

**WRIT GRANTED AND MADE PEREMPTORY; REMANDED WITH INSTRUCTIONS.**