NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

19-796

CAMILLE LANDRY, ET AL.

VERSUS

PEDIATRIC SERVICES OF AMERICA, INC., ET AL.

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

ON APPLICATION FOR SUPERVISORY WRIT FROM THE

FIFTEENTH JUDICIAL DISTRICT COURT,

PARISH OF LAFAYETTE, NO. 2013-2251,

HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

SYLVIA R. COOKS

JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Elizabeth A. Pickett,  John E. Conery, and Kent D. Savoie, Judges.

WRIT GRANTED AND MADE PEREMPTORY. WE REQUEST THE LOUISIANA SUPREME COURT APPOINT A JUDGE AD HOC FROM OUTSIDE THE FIFTEENTH JUDICIAL DISTRICT COURT TO HEAR THE NULLITY ACTION.

Savoie, J., concurs in the result.
Pickett, J., dissents and would deny the writ.

John L. Hammons
Cornell R. Flournoy
William W. Murray, Jr.
Nelson & Hammons, APLC
315 S. College Road, Suite 146
Lafayette, LA 70503
(337) 534-0515

**Attorneys for Plaintiffs-Applicants,**
  **Camille Landry, Individually and**
  **on Behalf of Her Minor Child Tai Landry,**
  **and Ryan Landry, Individually and**
  **on Behalf of His Minor Child, Tai Landry**

**Marc W. Judice**
**James J. Hautet**
**P.O. Box 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**Attorneys for Defendants-Respondents**
  **Dr. Rosaire Josseline Belizaire and**
  **Dr. Cong T. Vo**

**Nadia De La Houssaye**
**Jones Walker, L.L.P.**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA 70502**
**(337) 539-7600**
**Attorney for La. Patient's Comp. Fund,**
  **On behalf of Dr. Vasanth Nalam**

**J. Michael Veron**
**J. Rock Palermo III**
**Vernon, Bice, Palermo & Wilson**
**721 Kirby Street**
**P.O. Box 2125**
**Lake Charles, LA 70602**
**(337) 310-1600**
**Attorneys for Defendant-Respondent,**
  **Pediatric Services of America, Inc.**

**Ashley M. Scott**
**Matthew C. Juneau**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, LA 70170-3600**
**(504) 566-5200**
**Attorneys for Defendant-Respondent,**
  **Pediatric Services of America, Inc**

**Cooks, J**.

Some background information is necessary to understand this protracted litigation which this court has had before it numerous times. In the underlying suit,[1] Camille Landry, individually and on behalf of her minor child, Tai Landry, and Ryan Landry, individually and on behalf of his minor child, Tai Landry (collectively Plaintiffs), sued a medical equipment provider and doctors alleging negligent injury which caused their child's brain damage. After trial by jury, Judge Ed Broussard (Judge Broussard) rendered judgment for Defendants[2] consistent with the jury's verdict. Plaintiffs appealed. This court affirmed the judgment. Plaintiffs then filed a petition to annul the judgment upon discovery of the trial court's failure to disclose an *ex parte* communication between juror Kim Mayer Gisclaire (Gisclaire) and Judge Broussard during the underlying jury trial. Defendant filed a peremptory exception of no cause of action. The nullity action was assigned to Judge Ed Rubin (Judge Rubin) who sustained Defendants' peremptory exception. Plaintiffs appealed and this court reversed and remanded. *See Landry v. Pediatric Servs. of Am., Inc., et al,* 14-376 (La.App. 3 Cir. 10/15/14), 149 So.3d 1012, *writs denied*, 14-2381, 14-2385 (La. 1/9/15), 157 So.3d 1112. Plaintiffs and Defendants then filed cross

---

[1]    *Landry v. Pediatric Servs. of Am., Inc.*, 15-899 (La App. 3 Cir. 4/6/16), 189 So.3d 540, 542, *writs denied*, 16-845, 16-785 (La.6/17/16), 192 So. 3d 771, 773.

[2]    The jury dismissed all claims against Defendants, Pediatric Services of America, Inc., PSA of Lafayette, LLC, Dr. Cong Vo, Dr. Rosaire Belizaire, Dr. Vasanth Nalam, and Louisiana Patient's Compensation Fund and assigned one hundred percent liability to a non-party physician. *See*, *Landry v. PSA of Lafayette, LLC*, 12-277 (La.App. 3 Cir. 11/7/12), 120 So.3d 707, *on rehearing* (Mar. 20, 2013).

motions for summary judgment. Judge Rubin granted summary judgment in favor of Defendants and denied Plaintiffs' motion for summary judgment. Plaintiffs appealed. A panel of this court (Cooks, Genovese and Peters) affirmed the denial of Plaintiffs' motion for summary judgment and reversed the granting of Defendants' motion for summary judgment. The case was again remanded. *See Landry v. Pediatric Servs. of Am., Inc. et al.*, 15-899 (La.App. 3 Cir. 5/6/16), 189 So.3d 540 *writs denied*, 16-785,16-845 (La. 6/17/16), 192 So. 3d 771, 773. In that ruling this court found "The undisputed facts in this case are that there was *ex parte* communication between Ms. Gisclaire and Judge Broussard and that the communication was not disclosed to the parties during the course of the trial." *Id*. at 545. The content of this communication was set forth in Gisclaire's affidavit.[3] We further said:

---

[3]    In my examination to become a juror, I revealed to the parties that I was presently a nurse at The Heart Hospital of Lafayette, but that formerly I had been a neonatal nurse working at Women's and Children's Hospital in Lafayette, Louisiana. I further revealed that I had worked certain cases with three of the defendants, Dr. Vasanth Nalam, Dr. Cong Vo[,] and Dr. Rosaire Belizaire. In my questioning, I indicated that despite the fact that I had worked with them, that I could be a fair and impartial juror[,] and I believed this to be so at the outset of the trial.

    After approximately one week of trial, I found that my employers at The Heart Hospital of Lafayette would not make financial arrangements for me to serve as a juror and that it was necessitating me working hours after jury duty, which was placing a physical and financial strain upon me. Another juror, Lyndsey Thibeaux, who was an alternate juror at that time, was also employed by The Heart Hospital of Lafayette and had similar problems. Ms. Thibeaux and myself asked to talk with Judge Ed Broussard who was presiding over the trial. We voiced our concerns to Judge Broussard, but he informed us that he was unable to control our employer's actions and that we would have to continue to serve. I also voiced at that time my concerns to Judge Broussard that I was feeling very uncomfortable with continuing to serve as a juror because much of the evidence was starting to involve friends and people I had worked with, such as Drs. Vo and Belizaire. He instructed us to continue serving as jurors and we did so.

    At some point later in the trial, I began to see the mention of a condition of "cortical thumb" in connection with the treatment of Tai Landry as an infant at Women's and Children's Hospital. I remembered having a discussion of this condition with the staff whose notes were being presented in evidence. Her name

2

We find that the content of the *ex parte* communication was not simply "administrative" or "managerial in nature[.]" *Delo Reyes,* 9 So.3d at 892. To the extent that the discussions raised legitimate questions on the suitability of Ms. Gisclaire to continue to serve as a juror, and her obvious concern about doing so, this *ex parte* communication gave rise to legal issues which should have been disclosed to the parties when they became known to the trial court. At that point in the trial, the questionable propriety of Ms. Gisclaire remaining as a juror should have been made known to the attorneys, and the attorneys should have been given the opportunity to explore further the nature and extent of Ms. Gisclaire's fitness and ability to continue to serve as a fair and impartial juror in this trial. **Given these facts, we readily find that the trial court proceeded improvidently and erred in instructing Ms. Gisclaire not to reveal her concerns to her fellow jurors and in failing to make a full disclosure to the attorneys of the information relayed to it. This occurrence constituted a procedural defect that occurred during the course of this trial.**

*Landry*, 189 So.3d at 546 (emphasis added).

The majority reasoned that this finding was not the end of the inquiry and further found:

The matter before us is an appeal of cross motions for summary judgment, not an appeal of the underlying jury verdict. In the instant case, Landry seeks to annul the judgment in the underlying action on the grounds that it was obtained by an ill practice. La.Code Civ.P. art. 2004(A).[4] In *Wright v. Louisiana Power & Light,* 06–1181, pp. 12–13

---

was Katherine Comeaux, and I recalled having the same discussion while I was working with her at Women's and Children['s] Hospital.

Later, on February 14, 2011, I recall that certain medical records were broadcast onto a screen for viewing by the jury[,] and I actually saw my name and my writing as a neonatal nurse in the treatment of Tai Landry. At the next break, I realized that I needed to speak to Judge Broussard and asked to do so. I spoke to Judge Broussard, who was also accompanied by his law clerk, Casey Blanchette. I told him that I had seen my notes and my name as a treating nurse on the case of Tai Landry. I did not feel it was appropriate since I had actually treated the child[,] and I recall discussing the condition of "cortical thumb" in connection with her treatment. Judge Broussard told me that "you are not to disclose this information to the other jurors[,] and I am not going to disclose this to the lawyers." He instructed me to continue to serve as a juror.

Landry, 189 So.3d at 545-46.

[4]

A. A final judgment obtained by fraud or ill practices may be annulled.

3

(La.3/9/07) 951 So.2d 1058, 1067 (footnote omitted), our supreme court has set forth the following relative to such a nullity action:

> In *Johnson v. Jones–Journet,* 320 So.2d 533 (La.1975), this Court reviewed the historical development of C.C.P. art. 2004 and noted that the jurisprudence under Art. 607 of the Code of Practice (the source of present C.C.P. art. 2004) established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Since that time, this Court has accepted those two requirements as the necessary elements in establishing a nullity action under Art. 2004. *See Gladstone v. American Auto. Ass'n, Inc.,* 419 So.2d 1219 (La.1982); *Kem Search[, Inc. v. Sheffield,* 434 So.2d 1067 (La.1983) ]; *Bell Pass Terminal, Inc. v. Jolin, Inc.,* 01–0149 (La.10/16/01), 800 So.2d 762.

However, those cases also further defined the types of conduct required to establish those two elements depending on the type of fraud or ill practice alleged. This Court has held that "the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." *Power Marketing [Direct, Inc. v. Foster,* 05–2023, p. 13 (La.9/6/06), 938 So.2d 662, 671]; *Kem Search, supra* at 1070 (citing *Chauvin v. Nelkin Ins. Agency, Inc.,* 345 So.2d 132 (La.App. 1 Cir.), *writ denied,* 347 So.2d 256 (La.1977)); *see also, Schoen v. Burns,* 321 So.2d 908 (La.App. 1 Cir.1975); *St. Mary v. St. Mary,* 175 So.2d 893 (La.App. 3 Cir.1965); *Tapp v. Guaranty Finance Co.,* 158 So.2d 228 (La.App. 1 Cir.1963), *writ denied,* 245 La. 640, 160 So.2d 228 (1964).

Because the matter before us is an action in nullity, the critical inquiry is whether the procedural defect which occurred during the trial rises to the level of an ill practice and, thus, constitutes a nullity under the pertinent statute and the jurisprudence. Landry answers this inquiry in the affirmative and concludes that because an ill practice occurred,

---

B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

La. Code Civ.P. art. 2004.

the underlying judgment is null under La.Code Civ.P. art. 2004. Of course, PSA reaches the contrary conclusion, and argues that it has not been shown that Ms. Gisclaire was unable or disqualified to serve as mandated by La.Code Civ.P. art. 1769(B). There is obviously a question of material fact as to whether the procedural defect rises to the level of an ill practice.

*Id.* at 546-47.

Thus, the majority found neither side was entitled to summary judgment. Judge Cooks concurred with extensive written reasons. In her concurrence, Judge Cooks explained that juror Gisclaire "can testify to no more than she has already stated in her affidavit." *Id*. at 549. Further, she explained:

> The only thing Gisclaire may testify to is whether any outside influence was brought to bear. What does this mean in this case? There is no assertion here that the bailiff acted improperly or that any outside party threatened the juror. The only possible outside influence here was revealed by Gisclaire when she told the trial judge that she had direct knowledge of the child's treatment, knew the hospital and the doctors being sued and had worked with them in this very case. What impact this relationship and knowledge had on Gisclaire's ultimate participation in jury deliberation and reaching a verdict is not discoverable because the Code of Evidence prevents inquiry into her thought processes.

*Id.* at 549-50.

In effect, Gisclaire was a potential witness in the underlying medical malpractice action. Moreover, she called into question in an *ex parte* conference with Judge Broussard during the trial whether she could reasonably be expected to remain impartial because she realized she had worked closely with the Defendants on the child subject of the litigation. As Justice Marshall wrote long ago, "the great value of a trial by jury lies in its fairness and impartiality," *Able v. Vulcan Materials Co.,* 11–448, p. 9 (La.App. 1 Cir. 2/8/12), 94 So.3d 1, 13 (emphasis added) (citations omitted). Further, as the court in *Able* underscored:

> A jury should enter upon the trial with minds open to those impressions which the testimony and the law of the case

5

> ought to make, **not with preconceived opinions which will resist those impressions.** *Id.* More recently, the United States Supreme Court has stated that among the basic fair trial rights that **can never be treated as harmless is the right to an impartial adjudicator, whether judge or jury.** *Gomez v. United States,* 490 U.S. 858, 876, 109 S.Ct. 2237, 2248, 104 L.Ed.2d 923 (1989). Indeed, the Louisiana Code of Civil Procedure recognizes the importance of a jury's impartiality, permitting a juror to be challenged for cause, "[w]hen the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial." La. C.C.P. art. 1765. Safeguards of juror impartiality include *voir dire* and protective instructions from the trial judge. *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

*Id.* at 13.

This court's prior remand allowed the parties to conduct additional discovery which includes taking the deposition of Judge Broussard. His deposition testimony may be used to call his credibility into question and the determination of that may hinge on the testimony of Judge Rubin as a witness. Plaintiffs filed a motion to recuse Judge Rubin based on statements he made in open court during the hearing on the motions for summary judgment in the nullity action because, they assert, these statements may lead to calling him as an impeachment witness depending on Judge Broussard's testimony in that action. Judge Rubin refused to recuse himself or to refer the matter for hearing to another judge. On writ of review of Judge Rubin's refusal to recuse himself or refer the matter for hearing before another judge, a different panel of this court reversed Judge Rubin and remanded the matter for appointment of a judge to conduct a hearing on the recusal of Judge Rubin. (Plaintiffs also filed a motion to recuse all judges of the Fifteenth Judicial District Court. Judge Rubin denied that motion as well. A panel of this court denied writs on that ruling as did the supreme court.) On remand, as to the recusal of Judge Rubin,

6

Judge Michot was first selected to hear the matter but self-recused. Judge Castle was then appointed to hear the matter. Judge Castle ruled that Judge Rubin should not be recused. Plaintiffs filed the current writ asserting two important reasons why Judge Rubin should be recused. We find these reasons are compelling and warrant recusal of Judge Rubin.

First, Plaintiffs assert Judge Rubin is a potential witness in the trial of the nullity action because he has publicly made comments during a hearing on this matter to the effect that Judge Broussard denied having met with juror Gisclaire during the underlying civil trial. These remarks were made on the record in open court on April 6, 2015, long before Judge Broussard, in a deposition taken on November 30, 2018, testified he had discussed the merits of the nullity action *only* with his then law clerk, Greg Klein, and his father. Judge Broussard also indicated during his 2018 deposition that he does not recall talking to the juror a second time about anything.

Judge Rubin's on the record 2015 remark actually presents a twofold basis for making him a potential witness in the nullity action: (1) it may contradict any assertion made by Judge Broussard when testifying at the trial of the nullity action that he spoke to no one about the matter except his law clerk and his father; and (2) it may show Judge Broussard is still attempting to improperly influence the outcome of the case by engaging in *ex parte* conversations with his colleagues or others about what transpired between him and the juror, though under oath his memory of the event escaped him. Plaintiff may be entitled to call Judge Rubin as a witness under the circumstance. La.Code Civ.P. art. 151(A)(1) provides "[a] judge of any court, trial or appellate, shall be recused when he: [i]s a witness in the cause[.]"

Defendant asserts that we should make adverse presumptions against Plaintiff for failing to call Judge Rubin as a witness in the recusal hearing before Judge Castle. Plaintiffs' counsel's reluctance to place a district judge on the witness stand to obtain testimony which may prove that his fellow colleague on the court may have had improper *ex parte* communications and now "fails to remember" that conversation is very understandable. This factor presents another reason why an ad hoc judge should be appointed in this matter. The situation presents obvious difficulties for all of Judge Broussard's colleagues and all attorneys involved.

The second reason put forth by Plaintiffs for recusal of Judge Rubin is based on another on the record comment by Judge Rubin in the hearings on the cross motions for summary judgment filed in the nullity action. Judge Rubin stated in open court: "**I can assure you if it goes to trial, I'm not going to be the trial judge. I'm going to get an ad hoc on this one if it does.**" (Emphasis added.) Plaintiffs assert this further indicates bias in the matter on the part of Judge Rubin as it bespeaks some reason why he feels it would not be appropriate for him to preside over the trial of the matter. If that indeed was Judge Rubin's position, as articulated by him in court proceedings in 2015, he should not now be permitted to make the decision of whether the nullity action can go forward. Moreover, this comment also indicates that Judge Rubin does not believe (at least he did not so believe at the time of his comment) any judge at the Fifteenth JDC should preside over the trial of the nullity action. Judge Rubin has not made known the reasons why he thinks, or thought that, no judge at the Fifteenth JDC should preside over the trial, but his adamant representation on the record in 2015 gives us pause as to the propriety of any judge in the Fifteenth JDC ruling on the nullity action, which not only involves questions concerning the credibility of Judge Broussard, but may now require other

8

colleagues of Judge Broussard to rule on the credibility of their colleague and possibly cast the judiciary in a bad light. Not only the Plaintiff, but the public in general, should have confidence in the impartiality of judges. Our rules of judicial conduct demand that judges avoid even the appearance of impropriety.[5] The trial judge was not in a position to speculate as to Judge Rubin's state of mind when she concluded that Judge Rubin meant nothing by what she terms an off-hand comment of no moment. She discloses no factual basis to reach such a conclusion. Judge Rubin's 2015 statement on the record clearly says what it says, and it must be taken at face value when deciding whether his sitting as a judge on the matter deprives Plaintiffs of due process and a fair and impartial judge. *See, Daurbigney v. Liberty Pers. Ins. Co.*, 18-929 (La.App. 3 Cir. 5/19/19), 272 So.3d 69.

We find this matter, in the interest of justice, warrants the appointment by the Supreme Court of a judge ad hoc from outside the Fifteenth JDC to preside on the matter. La. Const. art. 5, § 5 gives the supreme court full plenary power to do so as has been recognized by this court and the high court. *See*, *In re Harrier Trust*, 18-1467 (La. 2/18/19), 263 So.3d 884, *In re Marshall Legacy Found.*, 19-450 (La. App. 3 Cir. 7/31/19), 279 So.3d 401, and *Cosse v. Orihuela*, 12-456 (La. App. 5 Cir. 1/30/13), 109 So.3d 950, *writ denied*, 13-680 (La. 4/26/13), 112 So.3d 850.

> Section 5. **(A) Supervisory Jurisdiction; Rule-Making Power; Assignment of Judges.** The supreme court has general supervisory jurisdiction over all other courts. It may establish procedural and administrative rules not in conflict with law and may assign a sitting or retired judge to any court. The supreme court shall have sole authority to provide by rule for appointments of attorneys as temporary or ad hoc

---

[5] "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

LA ST CJC Canon 2.

9

judges of city, municipal, traffic, parish, juvenile, or family courts.

La. Const. art. 5, § 5.

In *In re Harrier Trust*, 263 So.3d at 884 (emphasis added), the supreme court issued a simple statement of their plenary power:

> Considering the unique facts presented in this case and in the exercise of our plenary authority pursuant to La. Const. Art. V, § 5(A), *we find the interests of justice warrant the appointment of a judge ad hoc to preside over this matter.* The specific appointment will be made in a separate order accompanying this opinion. Because this appointment renders the recusal issues moot, the applications are denied in all other respect.

This court employed this solution in a recent matter, *In re Marshall Legacy Foundation*, 279 So. 3d 401. We reached this decision in *Marshall* because one of the judges of that court had a direct financial interest in the trust and was a co-trustee. Several of the judges had self-recused, leaving only four remaining judges to consider whether each should recuse or be recused if assigned the matter in this very protracted litigation. That panel found the interests of justice compelled us to remand the matter with an order that "the Fourteenth Judicial District Court request the immediate appointment of a judge ad hoc by the Louisiana Supreme Court to hear the pending motions to recuse." *Id*. at 404. The current case likewise has a protracted history as this case has been ongoing since October 21, 2004 and involves potential strain on the relationship between judicial colleagues. For the reasons stated, we now request the Louisiana State Supreme Court appoint a judge ad hoc from outside the Fifteenth Judicial District Court to hear the motion for new trial.

In *Cosse*, 109 So.3d at 954–55, (footnotes omitted) the fifth circuit rejected the defendant's argument that the parish court had not complied with the Code of Civil Procedure's requirements for appointment of an ad hoc judge following the recusal of several judges of that court:

[D]efendant argues that because the supreme court's appointment of Judge Waldron did not comply with LSA–C.C.P. arts. 4861–4866, it is absolutely null.

. . . .

The pertinent article that defendant claims was not complied with is LSA–C.C.P. art. 4864(A), which provides:

> When a judge of a parish or city court recuses himself, he shall appoint another judge of the same parish or city court, if that court has more than one division; otherwise, he shall appoint either a parish or city court judge from an adjoining parish or, as judge-ad-hoc, an attorney domiciled in the parish who has the qualifications of a parish or city court judge.

The record indicates that this procedure was followed until Judge Olivier submitted a request to the supreme court to assign an ad hoc judge. *The record does not indicate why that request was submitted, but we nevertheless find the appointment of Judge Waldron was not improper in light of the supreme court's authority over all other courts.*

Under Article V, Section 5(A) of the Louisiana Constitution of 1974, the Louisiana Supreme Court has the authority to assign a sitting or retired judge to any court. *State v. Hyman,* 10–335, p. 7 (La.App. 5 Cir. 2/15/11), 62 So.3d 146, 152, *writ denied,* 11–0558 (La.9/30/11), 71 So.3d 282. *It is well recognized this constitutional grant of supervisory authority to the Louisiana Supreme Court over all other courts is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. Unwired Telecom Corp. v. Parish of Calcasieu,* 03–0732, p. 8 (La.1/19/05), 903 So.2d 392, 400 (citations omitted).

In *Unwired Telecom Corp. v. Parish of Calcasieu*, 03-732, pp. 8-9 (La. 1/19/05), 903 So.2d 392, 400 (emphasis added), the supreme court made clear the breadth of its plenary power over the lower courts:

> The Louisiana Supreme Court has been granted supervisory powers since the constitution of 1879. Albert Tate, Jr., Supervisory Powers of the Louisiana Courts of Appeal, 38 Tul. L.Rev.. 429, 430 (1964). Indeed, as provided, in pertinent part, in La. Const. Ann. art. V, § 5(A), **"The supreme court has general supervisory jurisdiction over all other courts." It is well recognized the constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete**

11

**discretion of the court.** *Progressive Sec. Ins. Co. v. Foster,* 97–2985 (La.4/23/98), 711 So.2d 675, 678 n3; *State Bond Comm'n v. All Taxpayers, Prop. Owners and Citizens of State,* 510 So.2d 662, 663 (La.1987); *State v. Wimberly,* 414 So.2d 666, 670 (La.1982); *Loeb v. Collier,* 131 La. 377, 59 So. 816 (1912); *State ex rel. Union Sawmill Co. v. Summit Lumber Co.,* 117 La. 643, 42 So. 195 (1906); Tate, 38 Tul. L.Rev. at 430; Comment, Supervisory Powers of the Supreme Court of Louisiana Over Inferior Courts, 34 Tul. L.Rev. 165 1959).

**This Court can at all times intervene under its own plenary supervisory powers, whether or not an intermediate court has properly acted on the matter**. Tate, 38 Tul. L.Rev. at 430.

For the reasons stated, we reverse Judge Castle's ruling and grant the motion to recuse Judge Rubin. In the interests of justice, we hereby request the Louisiana Supreme Court appoint a judge ad hoc from outside the Fifteenth Judicial District Court to hear the nullity action.

**WRIT GRANTED AND MADE PEREMPTORY. WE REQUEST THE LOUISIANA SUPREME COURT APPOINT A JUDGE AD HOC FROM OUTSIDE THE FIFTEENTH JUDICIAL DISTRICT COURT TO HEAR THE NULLITY ACTION.**